THE INTERSTATE B. & L. ASSOCIATION v. WATERS.

1. AMENDMENTS—PLEADINGS.—A motion to amend pleadings so as to conform to proof is within discretion of Judge, and in this instance he has not abused that discretion to prejudice of appellant.

2. TAX EXECUTION—TAX SALE.—Failure of county treasurer to specify on tax execution amount of taxes due each separate fund, will not vitiate tax sale thereunder, when aggregate amount of taxes is correctly stated.

3. FINDING OF FACT, that sheriff took possession of land by his agent, sustained.

4. TAX EXECUTION—TAX SALE—NULLA BONA—TAX ACT 1891.—Under tax act of 1891, sheriff must first exhaust personal property of delinquent before levy on land, but *nulla bona* return as to personalty is *prima facie* evidence of *no personal property*, and will sustain a sale of land under that execution.

5. TAX SALE—TAX TITLE—MORTGAGOR AND MORTGAGEE—ESTOPPEL—FRAUD.—A mortgagor who, by negligence or fraud, suffers mortgaged lands to be sold for taxes, and then purchases at tax sale or after forfeiture, is estopped from setting up such title against mortgage lien, and so is any other person who enters into a scheme with mortgagor for that purpose.

6. TAX TITLE—MORTGAGOR AND MORTGAGEE—ESTOPPEL—FRAUD.— When mortgagor borrows the money either for himself or his wife to redeem mortgaged lands sold for taxes, and has deed made to her for purpose of defeating mortgage lien, the wife is estopped from setting up such title against mortgage lien.

Before BENET, J., Florence, November, 1896. Reversed.

Action by the Interstate Building and Loan Association against N. A. Waters, W. C. Waters, J. G. Waters, J. R. Waters, and W. F. Clayton, to set aside tax deed and to foreclose mortgage, of whom N. A. Waters alone answered. The following is the Circuit decree:

This is an action brought by the Interstate Building and Loan Association against W. C. Waters *et al.*, to foreclose a mortgage upon real estate, and to set aside and cancel certain deeds, one by the sheriff of Florence County to the Sinking Fund Commission, and one from the Sinking Fund Commission to N. A. Waters, one of the defendants, all of which deeds and the mortgage cover the same tract of land. The issue raised by the pleadings involve the validity of a tax title, which title is sought to be set aside by the plaintiff upon four grounds: 1st. That the personal property of the delinquent taxpayer was not first exhausted. 2d. That the sheriff did not take exclusive possession of the delinquent land. 3d. That while the title to the land in question is nominally in the wife of the delinquent tax-

payer, he having paid for it with his money, therefore, he is estopped from setting up title against the mortgage. 4th. That by reason of the omission in the tax execution of the separate items of taxation, to wit: "For the State," "For Public Schools," "For County," "For Special," that the execution is fatally defective and the sale thereunder void. The first three grounds are questions of fact and controlled by the testimony which was taken before special referee, and is before this Court. The uncontradicted evidence of the deputy sheriff shows that he made search for personal property, and finding none, levied upon the real estate, leaving the defendants, W. C. Waters and N. A. Waters, in charge of the same as agents of the sheriff, and by his action in the premises, I am constrained to hold that he fully complied with the law; and while the testimony of W. C. and N. A. Waters is conflicting in some respects, not, however, on material points, I think that it is sufficiently clear that the money borrowed from Dr. Ilderton by the husband with which to purchase the land was borrowed for the wife, N. A. Waters, to whom the Sinking Fund Commission made titles, and that the title is not only nominally, but really, in her, and whatever title the Sinking Fund got by the sheriff's conveyance, she has by the conveyance from Sinking Fund Commission. This brings us to the legal issue of the case, which to any mind is quite clear. The face of the execution shows that the whole amount of the taxes and penalty has been included, the omissions being the objects of taxation. In *Owens* v. *Owens*, 25 S. C., 159, the Circuit Judge, affirmed by the Court, says: "The certified copy of entries in the forfeited land record directed to be furnished the State auditor, I do not think is intended as part of the evidence of forfeiture, but merely to enable the State and county treasurer to have a correct annual settlement." I think it but common sense to apply his reasonings to the omissions in the execution here complained of. I can see no other purpose they supply than a settlement between the fiscal officers of

the State and county; they add nothing to the efficacy of the execution, they can by their absence detract nothing from it. All the taxpayer is interested in is the total amount he is required to pay; its distribution is a matter for the officials. No one has been misled or injured by the omission of the objects of taxation in the execution. No one could have gained anything by their insertion, harmless in either aspect. I, therefore, hold that the irregularity is not such as would affect the sale, and that the conveyance by the Sinking Fund Commission to N. A. Waters is a valid conveyance, discharged of the lien of the mortgage held by the Interstate Building and Loan Association and sought to be foreclosed in this action, and it is ordered, adjudged, and decreed, that the complaint of the plaintiff be dismissed, and defendant have leave to enter up judgment for costs.

From this decree the plaintiff appealed on following exceptions:

I. The Court erred in refusing plaintiff's motion to amend its complaint.

II. The Court below erred in not holding that the said tax warrant or execution under which the said property was attempted to be sold, and that the said sale and conveyance made thereunder by the sheriff of aforesaid county, are fatally defective and utterly null and void, *inter alia*, for the following reasons: 1st. The said tax warrant or execution is void, in that the treasurer failed to specify thereon "the amount to each fund," to wit: it does not appear on the said warrant or execution what part of said amount of taxes was levied "for the State" purposes, or the amount levied for "public schools," or the amount for county purposes, or the amount levied for special purposes, as required by law. 2d. The levy by the sheriff on the said property and the sale made under said defective warrant or execution were defective and void in that the sheriff failed to take either possession or exclusive possession of said property or of any of

said defaulting taxpayer's property so assessed, real or personal, as required by law.   3d.  The alleged levy and sale of said property by the sheriff, under said defective warrant or execution, was fatally defective, in that the said sheriff did not first levy upon, by distress and sale, the personal property which the said defaulting taxpayer then possessed and owned and returned for taxation, before attempting to levy upon and sell the said real estate.

III.  After finding that "the uncontradicted evidence of the deputy sheriff shows that he made search for personal property, and finding none, levied upon the real estate," the Court below should have found further, that at that time and at time of the alleged levy and sale under the tax execution, the defendant, W. C. Waters, had sufficient personal property to have satisfied said execution; that the reason said deputy did not find said personal property was the false statements to said deputy by said N. A. Waters, that W. C. Waters owned no personal property, and the false and fictitious claim to ownership thereof made by N. A. Waters; and that by reason of said conduct and false statements, the Court below erred in not holding that N. A. Waters was and is estopped from setting up said tax deeds and sale of the real estate under said tax execution.

IV.  The Court below erred in not finding and holding that the defaulting taxpayer, W. C. Waters, paid the amount of taxes so assessed, with cost and expenses, and thereupon the Sinking Fund Commission made conveyance of said property to the defendant, N. A. Waters, the wife of W. C. Waters, and, though nominally the title was in name of N. A. Waters, the real title and beneficial interest therein is still in W. C. Waters; and in not holding that the lien of plaintiff's mortgage was superior to any alleged title of the defendant, N. A. Waters, acquired by the conveyance from the Sinking Fund Commission.

V.  The Court below erred in finding that "the money borrowed from Dr. Ilderton by the husband, with which to purchase the land, was borrowed for the wife, N. A. Waters,

to whom the Sinking Fund Commission made title, and
that the title is not only nominally but really in her, and
whatever title the Sinking Fund Commission got by the
sheriff's conveyance, she has by the conveyance from the
Sinking Fund Commission."

VI. The Court below erred in not finding that the money
paid to the Sinking Fund Commission was the individual
money of W. C. Waters, and that the conveyance from the
Sinking Fund Commission was taken by W. C. Waters in
name of his wife, N. A. Waters, for the purpose of defeat-
ing the lien of plaintiff's mortgage.

VII. The Court below erred in holding that the convey-
ance of the Sinking Fund Commission to N. A. Waters is
a valid conveyance, discharged of the lien of the mortgage
held by the plaintiff, and sought to be foreclosed in this
action, and in dismissing the plaintiff's complaint.

*Messrs. Thompson & Kershaw* and *Henderson Bros.*, for
appellant, cite: *Personalty must be first sold before resort to
land:* 34 S. C., 364; 37 Vt., 313; 40 S. C., 69; 15 S. C., 192;
31 S. C., 553; 34 S. C., 495. *Tax claim being satisfied, title
in delinquent:* 36 S. C., 64; 25 S. C., 161.

*Mr. W. F. Clayton*, contra, cites: *Nulla bona best evidence
no personal property:* 34 S. C., 374. *Instances of tax titles
sustained based on irregularities:* 40 S. C., 114; 1 Hill, 304;
3 S. C., 338; 13 S. C., 120; 22 S. E. R.; 607; 25 S. C., 159;
4 Rich., 286; 2 Hill, 457; 10 S. C., 128; 14 S. C., 628. *Judg-
ment against delinquent taxpayer ranks with others:* 10 S.
C., 260. *All defects waived in twenty days:* 37 S. C., 395.

Sept. 27, 1897. The opinion of the Court was delivered by
MR. JUSTICE JONES. The defendants, W. C. Waters, J.
C. Waters, and J. R. Waters, on December 9th, 1891, be-
sides assigning their ten shares of the capital stock of the
plaintiff association, executed a mortgage to plaintiff on
certain real estate in the city of Florence to secure their
bond given for a loan of $500. This real estate was assessed

for taxation in the name of W. C. Waters, together with some personal property also assessed in his name, which latter was assessed at $25. W. C. Waters having defaulted in the payment of taxes on this property, a tax execution, dated March 7th, 1893, for $10.63, was issued and placed in the hands of the sheriff. After a return of *nulla bona* as to personal property, the sheriff, after due advertisement, exposed for sale and sold the said mortgaged real estate to the Sinking Fund Commission, the same being conveyed to the Sinking Fund Commission by the sheriff by deed dated September 28, 1893. On December 16, 1893, for $37.50, the Sinking Fund Commission made a deed for this land to the defendant, N. A. Waters, the wife of the defendant, W. C. Waters.

This action was commenced April 3, 1895, to set aside the above deeds and to foreclose the said mortgage. This appeal is from a decree dismissing the complaint. The decree and exceptions thereto appear in the official report.

The case was heard upon testimony taken by a referee under an order of reference. On the call of the case in the Circuit Court, plaintiff, having given notice thereof, moved to amend the complaint so as to conform the pleading to the proof by the addition of certain specified allegations. The refusal of the motion to amend is the first ground of appeal. The matter of allowing such amendment is within the discretion of the Circuit Court, and we do not find that he has abused that discretion to the prejudice of appellant.

The deed of the sheriff to the Sinking Fund Commission is attacked on three grounds. 1. Failure of the county treasurer to specify on the tax execution the amount of taxes separately for each fund, viz: State, public schools, county, and special. 2. Failure of the sheriff to take exclusive possession of the delinquent land. 3. Failure of the sheriff to first exhaust the taxpayer's personal property. We agree with the Circuit Judge that the failure of the county treasurer to specify the amount of taxes for

each separate fund is not such an irregularity as would make void the sale by the sheriff. The aggregate amount of the taxes for State, public schools, county, and special was specified in the execution. The execution showed the sheriff what to collect, the taxpayer what to pay, and disclosed the general purposes of the tax. The aggregate tax is admitted to be correct, and it is not contended that the property in question was not bound by the lien for the aggregate tax. Under these circumstances. we cannot hold that the mere omission to fill certain blanks showing the amount of tax going to each specific fund, not material for the information or protection of either the sheriff or the taxpayer, is a fatal irregularity.

In reference to the objection that the sheriff failed to take exclusive possession of the delinquent land, the Circuit Judge found, as matter of fact, that the sheriff "levied upon the real estate, leaving the defendants, W. C. Waters and N. A. Waters, in charge of the same as agents of the sheriff." The preponderance of the evidence is not against this conclusion. It follows that this ground of objection must fail.

In reference to the point that the sheriff failed to first exhaust the taxpayer's personal property, the Circuit Judge found, as matter of fact, that the deputy sheriff made search for personal property and found none. The return of *nulla bona* as to personal property was *prima facie* evidence that there was no personal property. *Ebaugh* v. *Mullinax*, 34 S. C., 374. This case of *Ebaugh* v. *Mullinax* held that before the land of a defaulting taxpayer could be validly sold for the non-payment of taxes thereon, there must be an unsuccessful effort made to enforce payment by distress and sale of· the personal property of the defaulting taxpayer. This construction was applied to the tax act of 1880, and we think the same construction should be given the tax act of 1891, upon which this case depends. This must be so, for the legislature thought it necessary in the tax act of 1892, and in the subsequent tax acts, to incor-

porate a provision, "that distress and sale of personal pro-
perty shall not be a condition precedent to the seizure and
sale of any real property hereunder." Under the act of
1891, the personal property of W. C. Waters was first lia-
ble for the payment of the taxes in question. But a *bona
fide* purchaser at a tax sale of realty has the right to rely
upon the return of *nulla bona* as the best evidence that
there was no personal property which could be found and
sold for the payment of the taxes, and as against such a
purchaser we could not hold that his title could be defeated
by merely showing that, as matter of fact, there was per-
sonal property of the delinquent taxpayer which may have
been seized and sold for the taxes. Under such a holding,
little reliance could be placed on tax sales of realty, and
in consequence, the machinery upon which the State relies
to secure revenues essential to its existence would be greatly
impaired. If, therefore, the plaintiff was seeking to fore-
close the mortgage in question against the Sinking Fund
Commission, or any other *bona fide* purchaser at the tax
sale, having no notice or knowledge that the return of
*nulla bona* was false, we would feel bound to hold that
such purchaser's title could not be defeated by a mere show-
ing that there was personal property out of which the taxes
should have been collected. Such a purchaser, too, when
all prerequisites for sale had been complied with, would
take the property discharged of all liens by mortgage or
otherwise. *Shell* v. *Duncan*, 31 S. C., 547; *Wilson* v. *Can-
trell*, 40 S. C., 114. The mortgagee could not complain
at such a result, since the statute affords him ample
protection. Revised Statutes, 334, provides that the
mortgagee, at any time before sale, may pay the taxes,
with costs and penalties, and is entitled to include the
amount so paid in the debt secured by the mortgage.
Common prudence demands that the mortgagee, presumed
to know the law, and bound to take notice of the adver-
tisement of sale for taxes, shall make it his business to see
that the State's superior lien for taxes shall not sweep

away his security, and to shield him from the consequences of his negligence, we would not feel justified in impairing the remedies for the collection of taxes.

In this connection we consider the third ground of appeal, which alleges that the Circuit Judge, having found that the deputy sheriff made search and found no personal property, should have found, as matter of fact, that the defendant, W. C. Waters, had sufficient personal property to have satisfied said tax execution, and that the deputy did not find said property because of the false statement by the defendant, N. A. Waters, that W. C. Waters owned no personal property, and that by reason of such conduct and false statement, the Court erred in not holding N. A. Waters estopped from setting up said tax sale of realty and deed as against the mortgagee. It is clear that a mortgagor cannot, by his negligence or fraud, suffer the mortgaged lands to be sold for taxes, and then, by purchase at the tax sale, or, after forfeiture, from the Sinking Fund Commission, acquire a title which he may set up to defeat the mortgagee's lien on said property. A court of equity could not tolerate this. What cannot be done directly, will not be permitted to be done indirectly. Therefore, a court of equity could not permit the wife of the mortgagor, or any other person, to acquire such title to the detriment of the mortgagee, as the result of a deliberate scheme between the purchaser and the mortgagor to defeat the lien of the mortgage. Such conduct would estop the purchaser from asserting such title against the mortgage lien. A careful examination of the testimony in this case convinces us that the defendant, N. A. Waters, is estopped to assert her title from the Sinking Fund Commission against the plaintiff's right to foreclose his mortgage lien thereon. We have shown that the personal property of the taxpayer should first be exhausted before resort to his realty, under the provisions of the act of 1891. In this case the taxpayer, W. C. Waters, for the fiscal year during which he defaulted in the payment of his taxes, re-

turned as his own, personal property valued at $25, more than sufficient to pay said taxes. The complaint alleged that W. C. Waters, at the time of the levy on the land, owned sufficient personal property in Florence County to have, by levy and sale, realized said taxes. W. C. Waters did not answer said complaint. When on the stand he denied that he had any personal property at the time of said return; that the personal property returned belonged to his wife. He attempted to explain how he returned his wife's property in his own name by saying, "sometimes he (the county auditor) would get my wife's property charged to me instead of my wife." This explanation the county auditor contradicted. W. C. Waters further testified that he bought this personal property from W. D. Heape and others, and sold it to his wife, N. A. Waters, and that she paid for it in money all at one time. Mrs. N. A. Waters, when asked where she got this property, said she did not feel disposed to answer, but she finally said that her husband was a carpenter and made it, and gave it to her, piece by piece; that she paid no money for it. When the deputy sheriff went to levy the tax execution on the personal property of W. C. Waters, Mrs. Waters told the deputy that W. C. Waters had nothing but his wearing clothes. The personal property returned for taxation in the name of W. C. Waters was then in the house where W. C. Waters and his wife, N. A. Waters, resided, to which place the deputy went to make levy. In consequence of this statement by Mrs. N. A. Waters, which was told to W. C. Waters, the deputy made return of *nulla bona* as to personal property. We are impressed that the claim that the personal property was not W. C. Waters', but N. A. Waters', was false, and was made with a view to cause seizure and sale of mortgaged property, in order to defeat the mortgage lien. This conclusion is aided by the testimony as to the conduct of Mr. and Mrs. Waters after the land was forfeited for non-payment of taxes.

In this connection, we will consider the fourth, fifth, and

sixth grounds of appeal. The Circuit Judge found "that the money borrowed from Dr. Ilderton by the husband with which to purchase the land was borrowed for the wife, N. A. Waters, to whom the Sinking Fund Commission made title, and that the title is not only nominally but really in her." The evidence satisfies this Court that W. C. Waters borrowed the money, $37.50, and paid it to the Sinking Fund Commission, and had the deed made in the name of his wife, as part of the scheme between him and his wife to defeat the lien of plaintiff's mortgage. The complaint alleged that the defaulting taxpayer, W. C. Waters, paid the amount of taxes assessed, with costs and expenses, and thereupon the Sinking Fund Commission made conveyance of said property to the defendant, N. A. Waters. W. C. Waters did not answer the complaint and deny this. The following is taken from the record of the testimony of W. C. Waters: "Who did you pay the money, $37.50, to for the deed? To the State agent, Mr. Cooper. Where did you get the money from to pay it? Borrowed it from Dr. Ilderton. What security did you give? I gave him a paper on the lots; I signed the paper I gave him; the paper was on one lot only. Has Dr. Ilderton got that paper yet? I don't know; he has not been paid; it was a short paper, drawn up by Dr. Ilderton, that the lot was to be security; it was after the State agent came here." Mrs. N. A. Waters testified on this subject as follows: "I claim the land described in the complaint. Who did you get it from? The deed will show; I got it from the Sinking Fund Commission; the agent was Mr. Cooper; I got the money from Dr. Ilderton, from whom I borrowed; it was $37.50, if I'm not mistaken. What sort of security? I don't feel disposed to answer the question; I refuse to answer it. Why? I don't think it necessary; my husband borrowed it for me. Who made the trade with Cooper? Both I and my husband talked to Mr. Cooper about it. Did you give Dr. Ilderton a note? I don't feel disposed to answer it. * * * What sort of security did you give Dr. Ilderton for this money?

I gave him a note. Is that all? Yes. Who was present when you gave this note? I do not remember. Was your husband present? Yes, sir." It will be noted that W. C. Waters does not say he borrowed the money for his wife. That thought came from Mrs. N. A. Waters alone. Her evident reluctance to testify is not calculated to impress a court of equity favorably. It is impossible to believe that she borrowed the money from Dr. Ilderton, giving him her note for it, in view of W. C. Waters' testimony that he borrowed the money, and gave Dr. Ilderton a paper, signed by himself, on one of the lots in question. It is to be regretted that Dr. Ilderton, a most worthy gentleman, was not called on to testify in so important an issue. If the husband borrowed the money, either for himself or his wife, and used the money thus obtained to put the title to the mortgaged premises in the name of his wife, in order to free it from the lien of the mortgage, such a transaction cannot find favor in a court of equity. The Circuit Court erred in not holding N. A. Waters estopped by her conduct to defend against the mortgage lien, under the title acquired by her under the tax sale. Furthermore, the defendants, W. C. Waters, J. G. Waters, and J. R. Waters, did not answer the complaint. Plaintiff is entitled to foreclosure against the mortgaged premises, and judgment against said last named defendants for any deficiency on the mortgage debt after sale of the premises and application of the proceeds to the costs and mortgage debt according to law.

The judgment of the Circuit Court is reversed, and the case remanded for further proceedings, in accordance with the principles herein announced.