## ARDERY ET AL. *v.* SMITH.

[No. 5,062.   Filed March 15, 1905.]

1. INTOXICATING LIQUORS.—*Remonstrance.—Power of Attorney.*—An attorney duly authorized by voters may execute a remonstrance for them against the granting of a license to sell intoxicating liquors. p. 97.

2. WORDS AND PHRASES.—*"Signature."*—The word "signature" means the act of putting down one's name at the end of an instrument to attest its validity.   p. 97.

3. INTOXICATING LIQUORS.—*Remonstrance.—Signatures in Typewriting.*—An attorney duly authorized to sign a remonstrance may law-

fully execute the same by having the names signed by an agent or clerk on a typewriter. p. 97.

4. INTOXICATING LIQUORS.—*Remonstrance for Unfitness.*—Any voter may resist an application for license to retail intoxicating liquors on the ground of the applicant's immorality or other unfitness. p. 98.

From Jennings Circuit Court; *William Fitzgerald,* Special Judge.

Application by Warren A. Smith for license to retail intoxicating liquors, against which Charles Ardery and others remonstrate. From a judgment of the circuit court granting the license, remonstrants appeal. *Reversed.*

*George F. Lawrence & Son, Thomas C. Batchelor* and *Chester A. Batchelor,* for appellants.

*Joseph H. Shea* and *Mark Storen,* for appellee.

ROBY, J.—On February 7, 1903, appellee published notice of his intention to apply to the board of commissioners of the county of Scott, at the regular session to be begun and held on the first Monday of March in said year, for a license to sell intoxicating liquors in less quantities than a quart at a time, with the privilege of allowing them to be drank on the premises described, in the town of Scottsburg, Vienna township, Scott county, Indiana. On February 27, there was filed in the auditor's office of said county a remonstrance, in accordance with the provisions of section nine of an act approved March 11, 1895 (Acts 1895, p. 248, §7283i Burns 1901), purporting to be signed by 372 resident voters of said township. On March 2 appellee filed in said office his verified application for license in accordance with the terms of the notice, and also a verified motion to strike from the remonstrance the names of 341 persons. The motion was overruled, and the cause continued until the 6th day of March, at which time appellants Ervin and Cline filed a remonstrance against the issuance of said license, averring therein that the appellee was not a man of good moral character, and setting out facts tending to show

prior violations of the law by him. The board found against appellee upon the general remonstrance, and refused to issue a license. Appellee thereupon appealed to the Scott Circuit Court. The venue of the case was changed to Ripley county, and again to Jennings county, where appellants filed a motion to dismiss the application. Such motion was overruled. They thereupon demanded a -trial by jury both upon the general remonstrance and the separate remonstrance of Ervin and Cline. Their motion to that effect was overruled. The court sustained appellee's motion to strike out the names aforesaid purporting to be signed to the general remonstrance, and, refusing to try the issue made by the remonstrance for cause, or to remand said proceedings to the board of commissioners for trial thereon, proceeded to hear evidence in support of such application, refusing to permit the appellants to cross-examine the witnesses introduced by appellee, or to offer evidence relative thereto, and rendered judgment granting a license as prayed. It was agreed that there were 584 votes cast for Secretary of State in said township at the last preceding general election. Appellants filed their motion for a new trial, which was overruled.

The propriety of the action of the court in striking out said names must be determined with reference to the following facts: The persons whose names were written on said remonstrance had, prior thereto, separately executed instruments, of which the following is a copy of one, and sample of all, to wit: "October 2, 1902. I, Charles Ardery, the undersigned, resident and voter in Vienna township, in Scott county, Indiana, do hereby respectfully authorize, empower and request Thomas A. Wilson and William H. Cranford, or either of them, to sign my name to any and all remonstrance or remonstrances against persons who may give notice of intention to apply for license to sell intoxicating liquors in said township, and also properly to file and present such remonstrance or remonstrances

to the board of commissioners of said county." At the time said remonstrance was prepared, said Wilson was afflicted with erysipelas in his right hand. He caused the 341 names aforesaid to be written on the remonstrance by a typewriting machine, which was done in his presence and under his supervision, and by a person operating said machine.

1. It is contended in support of the action of the trial court in striking out said names: (1) "That in all cases where the signature of any person is required by law, the proper handwriting of such person, or his mark, is required;" (2) that the authority so conferred upon said Wilson was not one which could be delegated by him. That the signature may be made by an attorney duly authorized is no longer an open question. *White* v. *Furgeson* (1902), 29 Ind. App. 144; *Ludwig* v. *Cory* (1902), 158 Ind. 582; *Ragle* v. *Mattox* (1902), 159 Ind. 584; *Fried* v. *Nelson* (1902), 30 Ind. App. 1. The right of the attorney to make the signatures being established, the only further question is whether he did so.

2. The word "signature" is defined as "the act of putting down a man's name at the end of an instrument, to attest its validity." Bouvier's Law Dict., tit., Signature. "Words traced with a pen, or stamped, printed, engraved, or made legible by any other device," are written. Anderson's Law Dict., tit., Writing. *Hamilton* v. *State* (1885), 103 Ind. 96-98, 53 Am. Rep. 491.

3. It being beyond question that the attorney had a right to sign the instrument, it can not be material whether in doing so he used a pen or a typewriter. No question as to the delegation of authority is involved.

In *Hamilton* v. *State, supra,* under a statute requiring an instrument to be signed by the prosecuting attorney, it was held that the name of said attorney printed at the bottom of the indictment was sufficient. *Williams* v. *McDonald* (1881), 58 Cal. 527; *Hancock* v. *Bowman* (1874), 49 Cal.

·413; *Pennington* v. *Baehr* (1874), 48 Cal. 565; *Herrick* v. *Morrill* (1887), 37 Minn. 250, 33 N. W. 849, 5 Am. St. 841; *Mezchen* v. *More* (1882), 54 Wis. 214, 11 N. W. 534.

In an opinion given in 1824 by William Wirt, then Attorney-General, the question submitted being whether the Secretary of the Treasury was authorized by a statute requiring warrants to be drawn and signed by him to have his name impressed thereon by means of a copper plate, the following language was used: "There would be great difficulty in maintaining the proposition as a legal one, that when the law required signing, it means that it must be done with pen and ink. No book has laid down the proposition, or even given color to it. I believe that a signature made with straw dipped in blood, would be equally valid and obligatory; and if so, where is the legal restriction on the implement which the signer may use? If he may use one pen, why may he not use several?—a polygraph, for example, or types—or a stamp. * * * The law requires signing merely as an indication and proof of the parties' assent." 1 Opinions of Attorneys-General, 670. The quotation is an apt one, as applied to the facts now under consideration. The typewriter is a modern convenience. The signature made by it was in this case the signature of the attorney; the operator being in fact his agent, exactly as the keys and the types were his agents. It has the same validity as if written by his own hand—indeed, within the meaning of the law, it becomes his proper handwriting. *Nye* v. *Lowry* (1882), 82 Ind. 316; *Croy* v. *Busenbark* (1880), 72 Ind. 48. It follows that the court erred in sustaining the motion to strike from the general remonstrance the names signed thereto in typewriting. It is noted, as corroborative of the conclusion thus reached, that the attorneys for appellee have signed their brief in this cause in typewriting, and not otherwise.

4. The statute under which appellee sought to procure a license provides in terms: "And it shall be the privilege

of any voter of said township to remonstrate, in writing, against the granting of such license to any applicant, on account of immorality or other unfitness, as is specified in this act." §7278 Burns 1901, §5314 R. S. 1881. Appellants Ervin and Cline having availed themselves of this right by filing such remonstrance before the board of county commissioners were entitled to have the issue thus made tried and determined. The Jennings Circuit Court, in denying such trial, also committed a reversible error.

Judgment is therefore reversed, and the cause remanded for further proceedings not inconsistent herewith.