14761

SMITH v. GREENVILLE COUNTY

(199 S. E., 416)

*Mr. Wilton H. Earle,* for appellant,

*Messrs. Price & Poag* and *W. A. Bull,* for respondent,

November 2, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Respondent is (or was) the duly appointed and qualified treasurer of Greenville County, and brought his action against appellant (Greenville County) to collect the $1.00 provided to be collected and paid county treasurers by Section 2854 of Vol. 2 of the 1932 Code of Laws, for every tax execution which he had issued, and which had been collected in full from the defaulting taxpayer, since July 1, 1931, to April 1, 1937, and his proportionate costs on executions paid in part during said period of time.

We set forth only such defenses pleaded by appellant as are referred to in the argued exceptions. They are: (1) Under appellant's "general denial," that the executions or warrants were not signed by the respondent, but his signature was stamped thereon with a rubber stamp by someone in his office, and that this did not constitute a signing by the treasurer as contemplated by Sections 2853 and 2854 of the Code, and that the executions or warrants were not issued in duplicate as required by the above-numbered Sec-

tions of the Code. (2) That Section 2854 of the Code of 1932 is unconstitutional, null and void, in that the said section is a special law relative to a subject concerning which a general law can be made applicable, in violation of Article 3, Section 43, Subdivision 9.

The uncontradicted testimony taken before the Master of Greenville County, to whom the case was referred for the taking and reporting of the testimony, and further testimony taken by the presiding Judge, was that in issuing tax executions respondent did not sign his name to same, but a rubber stamp was used which produced a facsimile of respondent's genuine signature; and that tax executions are issued in the following manner: A book of forms is furnished county treasurers by the State of South Carolina; such form book contains an original and duplicate receipt, perforated so as to be easily detached, which receipts are filled out by the treasurer. On the back of a detachable slip attached to these receipts is a printed form of command to the collecting officer to levy and collect the tax. If the tax is not paid to the treasurer, he stamps across the face of the receipt the words "In Execution," signs the printed command above referred to on the original and delivers such original to the collecting officer, and this has been for several years the adopted method of issuing executions. The treasurer retains the duplicate or carbon copy in the book in his office.

No question is made of it in this appeal, and will not be considered by this Court, but the exhibits (tax receipts and executions or warrants for the years 1935 and 1936) do not show that they were signed (rubber stamped) by respondent as treasurer.

The attack made on the constitutionality of Section 2854 of the Code of 1932 by appellant's third exception has been settled against appellant by the decision in the recent case of *Gamble v. Clarendon County et al.*, 198 S. E., 857, not as yet published in the S. C. Reports.

Appellant's first and second exceptions allege error in the holding that the executions or warrants were signed by the county treasurer when the undisputed testimony shows that same were stamped with a rubber stamp by someone in the treasurer's office; and in the holding that there was a substantial compliance with Sections 2853 and 2854, as to the executions or warrants being issued in duplicate.

We adopt as the opinion of this Court so much of the order of the learned trial Judge as relates to these questions, the same being as follows:

It is finally urged and contended by the defendant that the plaintiff is not entitled to the fees in question by reason of the fact that the tax executions or warrants on which the tax execution fees were collected were stamped by the plaintiff with his autographed or facsimile signature stamp and were not issued in duplicate.

As to the stamping of the executions:

The statute 2854 provides "The treasurer for every such warrant issued shall have from such defaulter $1.00." In this case the treasurer issued the executions by stamping them with his autographed or facsimile signature stamp.

In my opinion, the stamping of the executions by the treasurer with his facsimile or autographed signature stamp was a sufficient signing of the executions and in law is the signature of the treasurer. The general rule as to the mode that one may adopt in affixing his signature is found in 58 C. J., on page 729, Paragraph 17, as follows: "E. Mode of Affixing. The signature may be written by hand, or printed, or stamped, or typewritten, or engraved, or photographed, or cut from one instrument and attached to another. A signature lithographed on an instrument by a party is sufficient for the purpose of signing it, and it has been held that it is immaterial with what kind of instrument a signature is made." Under the above text, there are many cases cited supporting the general rule.

The sufficiency of printed, stamped and typewritten signatures is discussed in Words & Phrases, first, second, third and fourth series, judicially defined under the word "Signature." A number of cases are there cited from various states which uphold signatures of this character. I quote from one of these cases in the first series of this work, as follows: " 'To sign' means to attach a name, or cause it to be attached, to a writing, by any of the known methods of impressing the name on paper with the intention of signing it; and where the name of the prosecuting attorney appeared in print on an indictment it is a sufficient compliance with Rev. St. 1881, § 1669, requiring the indictment to be 'signed by the prosecuting attorney.' *Hamilton v. State,* 103 Ind., 96, 2 N. E., 299, 300, 53 Am. Rep., 491."

I also quote from the second series of this work, as follows: "The word 'signature' being defined as 'the act of putting down a man's name at the end of an instrument to attest its validity' (Bouv. Law Dict. Tit. 'Signature') and writing, as 'words traced with a pen, or stamped, printed, engraved or made legible by any other device' (And. Law Dict. Tit. 'Writing'), it was held that, an attorney in fact being authorized to sign a remonstrance against the issue of a liquor license, it was immaterial that he did so by typewriter. *Ardery v. Smith,* 35 Ind. App., 94, 73 N. E., 840, 841 (citing *Hamilton v. State,* 103 Ind., 96, 98, 2 N. E., 299, 53 Am. Rep., 491)."

I also quote from the third series of this work, as follows:

"A printed signature, attached to an interest coupon payable to bearer, is sufficient; 'signature' including any name, mark, or sign written with intent to authenticate any instrument or writing, under Or. L., § 2400. *Toon v. Wapinitia Irr. Co.,* 117 Or., 374, 243 P., 554, 557.

"Facsimile signatures of the officers of a Federal Reserve Bank on a circulating note issued by the bank are in law

the true and genuine 'signatures' of those officers. *Hill v. U. S.* (C. C. A. Ill.), 288 F., 192, 193."

As to the duplicate:

> ■ Under the testimony offered before me, I am of the opinion that there was a substantial compliance with the statute as to the issuing of the executions in duplicate.

Even if I should be in error as to a sufficient issuing of the duplicate, it seems clear that this would be a mere irregularity which did not invalidate the execution or affect the right of the treasurer to his fee, which has been collected and paid by the defaulting taxpayers.

In the case of *Dickson v. Burckmyer*, 67 S. C., 526, 46 S. E., 343, the same claim was made by the taxpayer that is being made here by the county, to wit, a duplicate execution was not issued. Our Supreme Court in disposing of this contention, at page 537, 46 S. E., at page 437, said: "Section 347, Rev. St. 1893 (Code 1902, § 421), requires the auditor to issue tax executions to the sheriff in duplicate, and provides that the executions shall 'run substantially' in the form therein prescribed. In case of sale, the sheriff is directed to attach the duplicate to the title. It is alleged here that only the original was given to the sheriff, and he attached this, instead of the duplicate to the deed. *This was a mere irregularity, which could not possibly be prejudicial to the taxpayer."*

In the above-entitled case the contention was also made that the execution was only partially filled out in that the name of the defaulting taxpayer and the amount of the tax was not inserted in execution. The Supreme Court in disposing of this contention said: "We think, therefore, the execution was valid, notwithstanding these alleged irregularities, and the eighth and ninth objections to the tax title are not well founded."

In the case of *Interstate Building & Loan Association v. Waters*, 50 S. C., 459, 27 S. E., 948, the county treasurer

failed to specify in the execution, the amount of taxes due each separate fund, as required by the statute (2853), to wit, State, public schools, county and special. Our Supreme Court in disposing of this objection said, at page 466, 27 S. E., at page 950: "We cannot hold that the mere omission to fill certain blanks showing the amount of tax going to each specific fund, not material for the information or protection of either the sheriff or the taxpayer, is a fatal irregularity."

The general rule on this subject is laid down in 61 C. J., 1045, Section 1362, as follows: " * * * But no defense can be founded on mere irregularities, errors, defects, or omissions of statutory duty, either in the assessment or in the proceedings which followed it, up to the commencement of the suit, which do not affect the substantial liability of defendant to pay the tax, unless they amount to a deprivation of his right to be heard in opposition to the assessment, its legality, or its amount."

See also 61 C. J., 1045, Section 1362, to the effect that an "unprejudicial irregularity" does not render the levy and warrant void. Also, 61 C. J., 1021, Section 1310, to the effect that irregularities not going to the essence of the collector's authority and not prejudicial to anyone, will not invalidate the warrant.

In addition to the views as expressed above as to the objection by the defendant as to the manner of issuing and signing the executions in question, it seems clear that the defendant at the outset is confronted with these two propositions, to wit: (1) The defendant, Greenville County, has no such interest in the execution fees as would entitle it to raise the point that they have been improperly issued. (2) No objection as to the form or manner of issuance can be raised here because those objections have been waived by the paying of the executions by the taxpayer and the acceptance of the benefits thereof by the county, including the penalty which went to the county.

In *Salley v. McCoy*, 182 S. C., 249, 189 S. E., 196, it was clearly and emphatically held (page 205) : "Plaintiff was clearly entitled to the fees involved. The county had no interest in them. They are \* \* \* paid (not by the public) by the defaulting taxpayers."

It must be borne in mind that the fees in question were paid by the defaulting taxpayers for the purpose of compensating the treasurer for issuing the execution. Section 2854. They were not paid to be placed in the treasury of the county for any county purpose or benefit. The taxes and penalties that were due to the county out of these executions were paid and have gone into the treasury of the county and the county still has the taxes and penalties or has used them for county purposes.

The county has not been injured by these executions, but, on the other hand, has benefited by them. It seems that the county stands in a very inconsistent and inequitable position, when it undertakes to hold on to all the benefits, such as taxes and penalties, which it has received under these executions, and in the same breath say they are invalid so as to deprive the plaintiff of the benefits which have been paid by the defaulting taxpayers for the benefit of the plaintiff.

It is academic that before one can complain or have any standing in Court, he must show some injury or impairment of some right or wrong suffered by him.

The appellant having abandoned its Exceptions 4 and 5, and the Court having reached the conclusion that appellant's other exceptions should be overruled, the judgment appealed from is affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.