## 14971

STATE v. BIBBS

(6 S. E. (2d), 276)

February, 1939.

*Mr. Joseph Murray,* for appellant,

*Messrs. Jeff D. Griffith, Solicitor, George Bell Timmer-man* and *J. Fred Buzhardt,* for respondent,

November 30, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The Court of General Sessions for McCormick County convened at McCormick, February 6, 1939, with Hon. L. D. Lide, Circuit Judge, presiding. Before the grand jury was sworn, the solicitor stated to the Court that he had been advised that some question had been raised as to the qualifications of some of the grand jurors to serve, and asked that the Court inquire into the qualifications of such jurors before they were sworn. His Honor asked if any member of the bar, representing defendants, had anything to say touching the examination of grand jurors before they were sworn. Mr. Murray, a member of the McCormick bar, stated that at the proper time he had a motion to make if the grand jury found a true bill against the appellant, who was charged with murder. His Honor suggested that it might expedite matters if the objections to the grand jury were stated then. The attorney presented to the Court a previously prepared motion to quash the indictment, the grounds of which may be stated in brief to be: That certain of the proposed grand jurors were not legally registered electors of the county, and, hence, were not legally qualified jurors. The Court then proceeded with the examination of certain proposed grand jurors, and other witnesses touching the qualifications of such proposed grand jurors.

It appears that J. A. Christian, T. R. Cartledge and W. K. McDonald constituted the duly appointed Board of Registration for McCormick County when the certificates of registration under consideration were issued.

Ansel H. Hamlin testified that he was registered. His certificate is dated January 5, 1938; he was registered at the office of the board; Mr. Cartledge and Mr. McDonald were there when he got his registration certificate; he resides in McCormick County; is 26 years of age; is entitled to vote in McCormick precinct. He does not recall whether J. A. Christian was present when he registered. Does not remember seeing any of the members of the board sign his certificate.

W. W. Banks testified that he registered September 5, 1938. The Board of Registration were all there; it was signed by the lady in there: "Q. The lady in there filled it out for you and she signed the names of the Board of Registration on this certificate? A. I just don't know; I know they were all in there." Is 63 years old and is entitled to vote at Plum Branch in McCormick County.

G. C. Sanders testified: Certificate of registration is dated January 5, 1938; Mr. Cartledge signed it. "Q. Was anybody else there? A. I think there was a girl there, but as to who signed it I couldn't tell you to save my life." Went to the registration office to get my certificate; all the members were there when I got it; clearly states my age and precinct.

E. C. Rice testified, was registered and became a qualified elector within the part eighteen months.
"A. I went down to the office where Mr. Cartledge, Mr. Christian and Mr. McDonald work.
"Q. Who signed your registration certificate? A. I don't recall, it was prepared while I was there.  *  *  *
"Q. And it clearly states your age and voting precinct? A. Yes, sir."

D. J. McAllister testified that he applied for registration to the board at the office here within the past two years. "Q. Did they issue you a certificate? A. Mr. Cartledge handed it to me, but I don't know who signed it. There were 12 or 15 waiting at the time." Identifies the certificate, does not know who signed it. All the members of the board were

present. The certificate clearly states his age and voting precinct.

At this stage his Honor said: "Gentlemen of the Grand Jury, if there is any member of this Grand Jury who has not been asked these specific questions, I want to ask you now if there is any one of you who did not appear in person to secure your registration certificate, I want you to state it now.

"Mr. C. A. Stuart: I got a duplicate.

"The Court: How about your original?

"Mr. Stuart: My original was brought to me.

"The Court: Did you appear in person to get the original?

"Mr. Stuart: No, sir, but I did to get the duplicate.

"The Court: How did you come to get your original?

"Mr. Stuart: I got Mr. Christian to bring it to me.

"The Court: But you did appear later, in person, and get the duplicate?

"Mr. Stuart: Yes, sir.

"The Court: Any other Grand Juror on this panel left, who got his certificate without appearing in person?

"No answer.

"The Court: Well, I will ask you this—Has any member of the Grand Jury got his registration certificate without at least two members of the Board being present?

"No answer."

### EXAMINATION OF BOARD OF REGISTRATION

Mr. T. R. Cartledge testified that he is a member of the Board of Registration of McCormick County. Mr. W. K. McDonald, Mr. J. A. Christian and I compose the board. In order to get a certificate of registration a person must be a resident of the State for two years, of the county for six months, 21 years of age and under no legal disability. Mr. Murray: "Has it been your practice, or have you, as a member of the Board, had a girl or someone to issue these certificates? A. We had a girl in the office with us," who sometimes signed the name of the board to these certificates. The

certificate of Mr. Bussey contains the name of the witness. The certificate of Mr. W. M. Wilson was handed to witness and he was asked if he signed it, to which he answered: "No, sir, one of the girls signed it. * * * I think my daughter signed it." Mr. McDonald did not sign it; the girl signed it. The certificate of D. J. McAllister was handed to witness. He did not sign it, nor did Mr. C h r i s t i a n. " * * * We looked over the certificate and handed it out." The certificate issued to E. C. Rice is shown witness who said that neither he nor Mr. McDonald nor Mr. Christian signed it. He was shown the certificate of G. C. Sanders and said he signed it and the girl they had in the office signed the other names. The board delegated the authority to witness' daughter to sign their names to these certificates. His signature does not appear on the certificate of Mr. W. W. Banks. It does not appear on the certificate of A. H. Hamlin; he wrote his and Mr. McDonald's names on it and one of the girls wrote Mr. Christian's name.

"And these, Mr. Cartledge, are just a sample of the numerous registration certificates you have handed out since January, 1938, when the registration law became effective? A. Yes, sir.

"Q. There are numerous names on the registration books who have been issued certificates of registration which have not been signed by you, Mr. McDonald nor Mr. Christian? A. They were signed in our presence. * * * We looked over them." All of them had our approval; some of them were signed by the clerk in our office. We just told her to sign them. We looked them over and handed them out.

The registration book with the list of the grand jury venire was brought into Court and the examination of Mr. Cartledge was continued by Solicitor Griffith. The witness was shown the certificate of W. M. Wilson and those of G. C. Sanders, E. C. Rice and Ansel H. Hamlin, and he said they had the necessary qualifications for registration and their names went on the registration book. The books of registration were put in evidence. The examination of

this witness was continued by Mr. Murray: The signatures in the book of registration for Lyon's Store are mine, Mr. Christian's and Mr. McDonald's. We wrote·these names. We did not sign all of the registration certificates, but we authorized it to be done.

Mr. W. K. McDonald testified that he is a member of the Board of Registration of McCormick County. The certificates shown him were not signed by him, except that of Mr. Bussey, which is a duplicate.

"Q. And the one of Mr. Bussey, the last one I gave you, is a duplicate, I believe? A. Yes, sir.

"Q. Do you remember who signed the original? A. I don't remember; but you remember that you told us it would be perfectly all right as long as we authorize the girl to do it.

"Q. No, sir, I don't remember that. A. It looks like you could remember that, as I sent for you and asked you about it."

Another certificate is shown him, which he said he did not sign, that they authorized the girl to do it. Another one was shown him the signature to which he said looked very much like some of his writing. His name is written on the back of the book. A lot of the registration certificates shown him were not signed by at least two members of the Board of Registration. The board adopted the signatures· on various registration certificates that were issued. The names that appear on the registration are the names of people who were found to possess the necessary qualifications for an elector. Witness said they applied for registration and Mr. Murray told him· it would be all right for the girl to sign these certificates. Mr. Murray was the county attorney. I know of my own knowledge that Mr. Christian authorized the girl to sign his name where it is signed, and he adopted the signature as his own.

"The Court: * * * One juror stated that he did not appear in person, and another stated that only one mem-

ber of the Board was present. I would say frankly that I think that all but these two are qualified."

The Court dismissed from the grand jury George L. Sharpton, Gary G. Palmer, E. F. Bussey and W. M. Wilson from the original panel, T. J. Magrath, Jr., from the special venire, who stated that he did not appear before the board, his certificate was sent to him. He does not appear on the list of the grand jury; it is presumed that he was excused but the record does not so state.

The grand jury was then organized and charged. On it appear the names of E. C. Rice, W. W. Banks, C. A. Stuart, G. C. Sanders, D. J. McAllister and Ansel H. Hamlin. E. C. Rice is foreman.

The grand jury as thus organized returned a true bill on an indictment which charged the appellant with the crime of murder. On this bill of indictment he was tried and convicted, and stands now under sentence of death.

We have been thus careful to make a full synopsis of the preliminary proceedings because the issues raised are serious ones, not only to the appellant, but to the welfare and safety of the State at large.

Upon being arraigned, and before pleading thereto, the appellant's attorney moved to quash the indictment, because the grand jury which found the indictment are not legally registered electors of the county and therefore are not legally qualified jurors; that on the grand jury are six members purporting to be registered as electors as follows: C. A. Stuart on January 14, 1938, G. C. Sanders on January 8, 1938, E. C. Rice on February 7, 1938, W. W. Banks on September 5, 1938, D. J. McAllister on February 7, 1938, and Ansel H. Hamlin on January 5, 1938. That none of these named jurors is a registered and qualified elector, or legally qualified grand juror for the reason that the law has not been complied with in that no two members of the Board of Registration for McCormick County, S. C., signed any of the certificates of registration for these named jurors, in spite of the plain mandate of the law that certificates of reg-

istration shall be signed by at least two members of the Board of Registration which shall issue such certificates. That the records of the Court show that at least six of the eighteen grand jurors returning the true bill of indictment upon which appellant was tried do not possess the legal qualifications of grand jurors prescribed by Section 22, Article V, of the Constitution, and Sections 608, 609 and 2278 of the Code of Laws of South Carolina 1932, in that they are not legally qualified electors, and hence do not possess the necessary qualifications of legal grand jurors; and the true bill of indictment found by the grand jury is null and void, and the rights of appellant were prejudiced and broken by the presence of the named grand jurors in that body and their participation in its deliberations.

The Court overruled the motion to quash in these words:

"The Court: You make an interesting argument, Mr. Murray; and I have carefully considered the points you make. In my view a member of the Grand Jury should be a qualified elector, which means a registered elector; he does not have to be a qualified voter, but he does have to be a qualified elector, and the evidence adduced before the Court shows that these jurors are duly qualified electors. You make the point that the registration certificate should be signed by a majority of the members of the Board of Registration, and the statutes does so provide, but, in my opinion that does not mean that a majority of the Board should actually attach their signature to the certificate. The statutes does not require a manual signing, and the evidence adduced before me was to the effect that these signatures were authorized by the members of the Board. A recent decision of the Supreme Court was to the effect that a signature affixed by means of a rubber stamp was good where such signature was authorized by the proper officials. So the evidence here shows that these jurors are duly qualified and registered electors. The Supreme Court further held that where a person did not apply in person for his registration certificate he was not a qualified elector; but, where the ap-

plicant applies for the certificate in person, to the Board, and that certificate bears the signature of at least two members of the Board, made by some other person in the presence of the applicant and two members of the Board, the applicant would be a qualified elector. The motion is, therefore, overruled."

The defendant has appealed on four exceptions, which practically restate the grounds of the motion to quash the indictment. We shall not treat them separately, but all of them shall have consideration.

The issues involved in this appeal are of prime interest and importance to the people of the State. Those who are of an age to remember the dangers of political elections which threatened the State, will recall the relief which was felt when the Constitutional Convention of 1895 included in that instrument the provisions looking to the registration of the electorate, as a safeguard to the right of sufferage and of the purity of elections. Statutes were enacted in pursuance of the mandates of the Constitution, to put them into effect. The questions which we are to decide in this case make the cardinal issue that the provisions of the Constitution and of the statutes applicable in the premises, in that the Board of Registration of McCormick County have not obeyed these provisions and in consequence electors called to serve as grand jurors were not legally registered, and, hence, are not legally qualified to serve as grand jurors.

It is due to the members of the Board of Registration of that county to say that no suggestion has been made that they have been actuated by any improper motive. And it is not to be understood that this Court intends any reflection upon their conduct or upon their integrity. They are men of acknowledged good repute.

Nevertheless, it cannot be lost sight of that any departure from the constitutional and statutory provisions which govern the registration of voters, if not declared to be illegal, opens a way, which, in the hands of unscrupulous or corrupt men, is fraught with great danger to the welfare of the

State. It devolves upon us, then, to closely scrutinize, carefully consider, and impartially decide the issues here made.

Did the trial Judge err in holding that Ansel H. Hamlin, W. W. Banks, C. A. Stuart, G. C. Sanders, E. C. Rice and D. J. McAllister were legally registered electors and were qualified to serve as grand jurors?

Section 17 of Article I of the Constitution of this State provides that no person shall be held to answer for a crime where the penalty exceeds a fine of one hundred dollars or imprisonment of thirty days, except upon an indictment of the grand jury of the county.

Section 4, Subdivision (f) of Article II of the Constitution provides that: "The General Assembly shall provide for issuing to each duly registered elector a certificate of registration, and shall provide for the renewal of such certificate when lost, mutilated or destroyed, if the applicant is still a qualified elector under the provisions of this Constitution, or if he has been registered as provided in subsection (c)."

In pursuance of the requirements of the Constitution, the General Assembly has provided in Section 2269 of Volume II, Code 1932, for the appointment by the Governor of "three competent and discreet persons in each county, * * * who shall be known as the Board of Registration."

Section 2278 of the said Code provides that registered voters shall be provided by the board "with a certificate of registration, which shall contain a statement of his name, age and place of residence as entered in the registration books, *and such certificate shall be signed by at least two of the members of the board of registration.*" (Italics added.)

Section 29 of Article I of the Constitution (S. C.), declares that: "The provisions of the Constitution shall be taken, deemed and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms."

Here are set out the provisions of the Constitution and the statutes which prescribe that a qualified grand juror is

one who is a legally registered elector. Is one who holds a certificate of registration upon which appear the names of the three men duly appointed by the Governor of the State as the Board of Registration for their county, but whose names were not signed by them on the certificate, but were placed thereon by a clerk in the office, at the direction of the members of the board, a qualified elector?

Counsel for the State argue that the members of the Board of Registration had the legal right to authorize another to sign their names to the registration certificate of a qualified elector and adopt the signatures placed thereon as their own, and cite in support thereof the cases of *Sharpe v. Sharpe*, 105 S. C., 459, 90 S. E., 34, 3 A. L. R., 891; *Smith v. Greenville County*, 188 S. C., 349, 199 S. E., 416, and *Hamilton v. State*, 103 Ind., 96, 2 N. E., 299, 53 Am. Rep., 491.

In the *Sharpe case*, Jefferson D. Sharpe, when too weak to write his name on a check, authorized another to write his (Sharpe's) name on it and he signed it with his mark. This was properly held good by this Court. But we do not think that is applicable here. Jefferson D. Sharpe was transacting his own business, he could do as he pleased about it. In the present case the members of the Board of Registration were engaged about the performance of a public duty in which they were directed by the statute law, under which they were acting, how they must proceed, viz., at least two of them must sign the certificates of registration.

The respondent attaches special importance to the opinion of this Court in the case of *Smith v. Greenville County*, 188 S. C., 349, 199 S. E., 416. In that case it was held that the tax executions were properly signed when the treasurer's name was placed thereon with a rubber stamp. We do not think that case is controlling here. There the officer was performing a mere ministerial duty. Here the members of the Board of Registration are performing a *quasi*-judicial duty. They are required to satisfy themselves that the applicant is qualified for registration under the con-

ditions imposed by the Constitution and in proof of their satisfaction as to his qualifications as an elector they are required to give him a certificate of registration signed by at least two of the board. This is a requirement imposed by a statute enacted by the direction of the Constitution. Its provisions are mandatory. If such certificate may be signed by a clerk who writes the names of the members of the board by the authorization of the members thereof, why may not a dishonest clerk sign the names of members of boards of registration without their authority and thus perpetrate a most hurtful fraud upon the State?

In the case of *State v. Rector,* 158 S. C., 212, 155 S. E., 385, 391, Mr. Justice Blease (afterward Chief Justice) declared the opinion of the Court. The indictment was quashed, one of the grounds of the motion to quash being that the grand jury which found the indictment was not a legal one because certain of them were not registered electors.

Mr. Justice Blease said thereabout:

" *   *   *   The indictment to be preferred by a grand jury, as required in the section of the Constitution last mentioned, must, of course, be one which has been returned by a legal grand jury. Section 17 of article 1, therefore, must be considered in connection with section 22 of article 5, quoted earlier herein, for in that section the persons who are. to compose a legal grand jury are therein described. And a legal grand juror, under the terms of the Constitution, must be a qualified elector. While the disqualification of a grand juror may be waived by the defendant if he does not make the objection in time   *   *   *, yet when a defendant does insist at the time when he may do so, he is entitled, as a matter of constitutional right, to have the grand jury, which indicts him, composed only of such persons as the Constitution of the state has plainly declared may act thereon.

"The provision of our Constitution that only a qualified elector may be a member of the grand jury is, in our opinion, mandatory, for in section 29, article 1, of that instrument, it is expressly declared: 'The provisions of the Constitution

shall be taken, deemed and construed to me mandatory and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms.'
* * * "

Mr. Justice Cothran, in his concurring opinion, said:

"As to the second ground, I may add the consideration that one who may be drawn, sworn in, and acts as a grand juror in passing upon an indictment, when he is not legally qualified to do so, is a stranger to the proceedings, as much as if he had never been drawn; his participation would therefore be illegal; it would be impossible to gauge the extent of his influence upon the qualified members of the jury."

"The Legislature may prescribe the methods for exercising the constitutional and statutory jurisdiction of boards of supervisors, and where it does prescribe the mode of procedure, the rule is exclusive of all others and must be followed. * * * " 15 C. J., 459-60.

As we have seen, the General Assembly of South Carolina has prescribed that at least two members of Boards of Registration shall sign the certificates of registration issued to applicants for registration, that duty is conferred on them exclusively.

It is alleged, and is true, that one of the grand jurors on the panel which found this indictment, first received a certificate of registration which he had not applied for in person, and has been given another which is denominated a "duplicate"; that there is no provision that the board may issue "duplicates"; that they may renew a certificate when the original certificate has become lost, mutilated or destroyed, if the applicant is still a qualified elector under the provisions of the Constitution. Section 4, Article 2 of the Constitution.

The grand juror, C. A. Stuart, applied for and received in person a new certificate which he calls "a duplicate." It does not appear from the r e c o r d whether the certificate first issued to him was lost, mutilated or destroyed. It does appear that he has a certificate duly and properly signed by at least two members of the Board

of Registration. Lacking evidence whether the first certificate was lost, mutilated or destroyed when the second one was issued, we shall not declare the latter one to be illegal, but we do declare that there was no authority given the Board of Registration to issue "duplicate" certificates.

We have reluctantly come to the conclusion that the grand jury which found the indictment upon which the appellant was prosecuted was not a legally qualified one, for the reason that at least five of its members who participated in its finding were not legally registered electors, because it is shown by the record that they were not legally registered, because their certificates of registration were not signed by at least two of the members of the Board of Registration for McCormick County.

As was said by Mr. Justice Gage in the case of *State v. Freely,* 105 S. C., 243, 89 S. E., 643, 645: "The defendant does not go acquitted; he must face only another jury."

In the case of *State v. Elliott,* 169 S. C., 208, 168 S. E., 546, 547, this Court said: " * * * The Constitution of the state, article 1, § 18, guarantees to every person accused of crime, trial by an impartial jury. It is a right of grave importance, and should not be violated from any conviction of the guilt of the person in whose trial the issue arises. It is a provision for the protection of all the citizens of the state. Not all persons accused of crime are guilty; this provision stands for their protection."

The judgment of the lower Court is reversed and the case remanded to that Court for new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.