STATE OF NORTH CAROLINA v. DAVID LEROY WATTS, No. 75CVS122; LEROY HARRINGTON, No. 75CVS123; GLENN WILLIAMS, JR., No. 75CVS124; ALLEN McLAURIN, No. 75CVS125; ALEX LINDSEY LOCKLEAR, No. 75CVS126; NEAL LLOYD, No. 75CVS127; AND EUGENE SWANSON BURNETTE, No. 75CVS128.

No. 16

(Filed 2 March 1976)

1. Evidence § 28; Signatures— public documents — authentication — mechanical signature
    Public documents may be authenticated by mechanical reproduction of the signature of the authorized officer when he intends to adopt the mechanical reproduction as his signature.

2. Automobiles § 2; Evidence § 28; Signatures— records of DMV — certification — mechanical signature
    In proceedings to revoke the driver's licenses of certain persons under the habitual offender law, copies of each defendant's record of conviction of prior motor vehicle offenses were admissible even though the certification thereon bore a mechanical reproduction of the signature of the authorized officer of the Department of Motor Vehicles since it may be presumed that the authorized officer intended to authenticate the documents and to adopt the mechanical reproduction of his name as his own signature when he provided records of the Department pursuant to G.S. 20-222.

---

State v. Watts

---

ON *certiorari* to review the judgments entered by *Judge A. Pilston Godwin, Jr.,* 27 June 1975, Superior Court of SCOTLAND County.

The district attorney for the Sixteenth Judicial District filed petitions against the seven named defendants pursuant to the provisions of Article 8 of Chapter 20 of the General Statutes of North Carolina which provide for revocation of driver's license of certain individuals with prior motor vehicle violations. When these proceedings were called before Judge Godwin on 27 June 1975, the district attorney sought to introduce an authenticated copy of each defendant's record of conviction of prior motor vehicle offenses. The trial judge rejected this evidence and signed a judgment in each case providing in part:

> . . . [T]hat the name "J. T. Baker, Jr.," which appears under a certification entry, appearing on the aforesaid purported copy of records of said Department of Motor Vehicles, is not a genuine signature of J. T. Baker, Jr., Director of the Driver License Division of said Department of Motor Vehicles, but that it is a mechanical reproduction of what appears to be a signature of J. T. Baker, Jr.

> IT IS, THEREFORE, ORDERED AND ADJUDGED that this proceeding be and it is dismissed and that the costs herein shall be by the clerk of this court taxed against the North Carolina Department of Motor Vehicles.

After entry of judgment in each case, the State unsuccessfully petitioned the Court of Appeals for a writ of certiorari in each proceeding. We allowed certiorari on 2 December 1975.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General William W. Melvin, for the State.*

*No counsel contra.*

BRANCH, Justice.

The trial judge's ruling does not question the admissibility into evidence of *properly authenticated* public records of the Division of Motor Vehicles, the certifying officer's authority as the then current keeper of the records of the Department of the Division, or the genuineness of the Departmental seal which was affixed to the respective records. The narrow question here presented is whether the trial judge correctly dismissed each case and taxed the Motor Vehicles Department with the costs

of each case because "the name 'J. T. Baker, Jr.' which appears under a certification entry, appearing on the aforesaid purported copy of records of said Department of Motor Vehicles, is not a genuine signature of J. T. Baker, Jr., Director of the Driver License Division of said Department of Motor Vehicles, but that it is a mechanical reproduction of what appears to be a signature of J. T. Baker, Jr."

Although this Court has not passed on this precise question, we have held that it is permissible for one to sign by the adoption of his name as written by another, *Barrett v. City of Fayetteville,* 248 N.C. 436, 103 S.E. 2d 500, and that a person may sign a deed by a signature written for him, by making his mark or by implementing some sign or symbol by which the signature may be identified. However, it is necessary that the signature, mark or symbol must be made with the signing party's consent. *Lee v. Parker,* 171 N.C. 144, 88 S.E. 217; *Devereux v. McMahon,* 108 N.C. 134, 12 S.E. 902. Decisions from other jurisdictions shed more light on the question before us.

In the case of *Cummings v. Landes,* 140 Ia. 80, 117 N.W. 22, the defendant contended that a notice of foreclosure was not properly served under a statute requiring that the notice "be signed by plaintiff or his attorney" because the attorney's name was printed on the notice. The Supreme Court of Iowa, in rejecting this contention, stated:

> . . . Looking at the original meaning of the word, in connection with the usage since the people generally have become able to write their own names, we have no trouble in reaching the conclusion that, as employed in the statute, no more is exacted than that the name of plaintiff or that of his attorney be attached to the notice by any of the known methods of impressing the name on paper whether this be in writing, printing, or lithographing, provided it is done with the intention of signing or be adopted in issuing the original notice for service. *Loughren v. Bonniwell,* 125 Iowa, 518, 101 N.W. 287, 106 Am. St. Rep. 319; *Herrick v. Morrill,* 37 Minn. 250, 33 N.W. 849, 5 Am. St. Rep. 841; *Mechen v. More,* 54 Wis. 214, 11 N.W. 534; *Hamilton v. State,* 103 Ind. 96, 2 N.E. 299, 53 Am. Rep. 491, and note. . . . As the plaintiff in the foreclosure suit presented the notice signed by his attorney to the court procured a decree to be entered, based on its sufficiency, it will be assumed,

in the absence of any showing to the contrary, that he had adopted the printed signature, . . . .

A case involving a similar issue was decided by the Utah Supreme Court in *Salt Lake City v. Hanson,* 19 Utah 2d 32, 425 P. 2d 773. There, several defendants had been charged with violating various ordinances of the City upon complaints made before a City Judge by an officer who was not the arresting officer. The signatures by the complainant and the judge were stamped signatures. The City Court dismissed the complaints without statement of reason. It was suggested that the reasons for dismissal were: (1) the stamped signatures and (2) the complaint was not signed by the arresting officer. The Supreme Court of Utah in holding that the stamped signatures were valid stated:

> In regard to a signature, it is the intent rather than the form of the act that is important. While one's signature is usually made by writing his name, the same purpose can be accomplished by placing any writing, indicia or symbol which the signer chooses to adopt and use as his signature and by which it may be proved: e.g., by finger or thumb prints, by a cross or other mark, or by any type of mechanically reproduced or stamped facsimile of his signature, as effectively as by his own handwriting.

Accord: *Joseph Denunzio Fruit Co. v. Crane,* 79 F. Supp. 117 (S.D. Cal. 1948) *aff'd* 188 F. 2d 569, *cert. denied,* 342 U.S. 820, 96 L.Ed. 620, 72 S.Ct. 37; *McGrady v. Munsey Trust Co.,* 32 A. 2d 106 (Mun. Ct. of App. for D.C.) ; *Cummings v. Landes, supra; Smith v. Greenville County,* 188 S.C. 349, 199 S.E. 416.

We find the following pertinent statement in 80 C.J.S. Signatures § 1, pages 1284, 1285:

> . . . A signature has also been defined as the act of putting down a person's name at the end of an instrument to attest its validity, any mark or sign made on an instrument or document in token of knowledge, approval, acceptance, or obligation; and also as whatever mark, symbol, or device one may choose to employ as representative of himself. Stated in greater detail, in legal contemplation "to sign" means to attach a name or cause it to be attached by any of the known methods of impressing the name on paper with the intention of signing it.

State v. Watts

A signature consists both of the act of writing the person's name and of the intention of thereby finally authenticating the instrument.

"The general rule that a stamped, printed, or typewritten signature is a good signature appears to be subject to an exception, where the signature is required by statute to be made under the hand of the person making it." Annot., 37 A.L.R. 87 (1925). We note at this point that the statutes pertinent to decision in this case do not impose this restriction. G.S. 8-35; G.S. 20-42(b) ; G.S. 20-222.

Generally there is a presumption that a public official in the performance of an official duty acts in accordance with the law and the authority conferred upon him. The burden is upon the contesting party to overcome this presumption. *Electric Membership Corporation v. Alexander,* 282 N.C. 402, 192 S.E. 2d 811; *Housing Authority v. Wooten,* 257 N.C. 358, 126 S.E. 2d 101. This rule of law is augmented by statutory provisions declaring that:

> . . . [R]ecords of any public office of the State . . . shall be received into evidence . . . in any of the Courts of this State when certified by the chief officer . . . to be true copies, and authenticated under the seal of the office, department, or corporation concerned. Any such certificate shall be prima facie evidence of the genuineness of such certificate and seal, the truth of the statements made in such certificate, and the official character of the person by which it purports to have been executed. G.S. 8-35.

[1] According to the records of the Division of Motor Vehicles during the year 1975, the Drivers License Section produced 422,637 documents requiring signatures. The purpose of authentication and certification of records is to avoid the inconvenience and sometimes the impossibility of producing original public documents in court. Obviously the admission of certified records tends to expedite the trial of cases. It is just as obvious that to require the manual signing of every record certified from the Division of Motor Vehicles would be extremely time consuming and expensive. We are of the opinion that the weight of authority and the better rule is that public documents may be authenticated by mechanical reproduction of the signature of the authorized officer when he intends to adopt the mechanical reproduction as his signature.

[2] In instant case, when the authorized officer of the Division of Motor Vehicles provided these records of the Department pursuant to the provisions of G.S. 20-222, it may be presumed that he intended to authenticate the documents and to adopt the mechanical reproduction of his name as his own signature.

We, therefore, hold that the trial judge erroneously dismissed the seven proceedings for the reason that the name J. T. Baker, Jr., is a mechanical reproduction of what appears to be a signature of J. T. Baker, Jr.

Even had the petitions been properly dismissed the costs of these proceedings could not have been properly taxed against the Division of Motor Vehicles. The *parties* to these proceedings were the State of North Carolina and the respective defendants. The costs should not have been taxed against the Division of Motor Vehicles which took part in these proceedings, not as a party, but pursuant to the statutory mandates contained in G.S. 20-220, et seq.

The judgments signed on the 27th day of June 1975 by Judge Godwin in the revocation proceedings against David Leroy Watts, No. 75CVS122; Leroy Harrington, No. 75CVS123; Glenn Williams, Jr., No. 75CVS124; Allen McLaurin, No. 75CVS125; Alex Lindsey Locklear, No. 75CVS126; Neal Lloyd, No. 75CVS127; and Eugene Swanson Burnette, No. 75CVS128, are vacated and each of these proceedings is remanded to the Superior Court of Scotland County for further proceedings consistent with this opinion.

Reversed and remanded.