IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-70

No. 207A21

Filed 17 June 2022

IN THE MATTER OF: E.D.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 15 February 2021 by Chief District Court Judge David V. Byrd in District Court, Wilkes County. Heard in the Supreme Court on 24 May 2022 in session in the Old Burke County Courthouse in the City of Morganton pursuant to N.C.G.S. § 7A-10(a).

*Erika Leigh Hamby for petitioner-appellee Wilkes County Department of Social Services.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Mitchell Armbruster, for appellee Guardian ad Litem.*

*Peter Wood for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1 Respondent appeals from an order terminating her parental rights to her minor child E.D.H. (Emily).[1] According to respondent, the trial court committed prejudicial error when Chief District Court Judge David V. Byrd signed the termination order after Judge Jeanie R. Houston, who had presided over the hearing,

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

retired. After careful review, we hold that that termination order was properly entered pursuant to Rules 52 and 63 of the North Carolina Rules of Civil Procedure. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

## I.    Factual and Procedural Background

The Wilkes County Department of Social Services (DSS) first got involved with Emily's family in September of 2017 due to allegations of domestic violence that resulted in Emily's father being charged with and later convicted of child abuse.[2] In February of 2018, DSS investigated a report of domestic violence occurring between the two parents while Emily was present and discovered that Emily's lower back was bruised significantly. Neither parent could nor would identify the source of the bruising. As a result, DSS requested a safety placement for Emily and, after the parents were unable to provide one, obtained nonsecure custody of Emily. Emily was subsequently adjudicated an abused and neglected juvenile.

DSS developed a case plan to address the conditions that led to Emily's removal, particularly respondent's mental health and mental stability. Respondent's mental health diagnoses included schizoaffective disorder, substance abuse disorder cannabis, mood disorder, bipolar II disorder, and post-traumatic stress disorder.

---

[2] Emily's father did not appeal from the termination order, which also terminated his parental rights, and is not a party to this appeal.

Respondent initially participated in therapy, but her participation appeared to have ceased during the six months prior to the termination hearing. During the pendency of the case, respondent voluntarily committed herself on two separate occasions. Additionally, respondent's interactions with the social worker prior to the termination hearing did not display stable mental health.

¶ 4 Another objective of respondent's case plan was remedying her history of domestic violence. A domestic violence assessment scored respondent as high risk. Respondent did not complete a program to address this risk until two years after the assessment and over seven months after DSS filed the termination petition. Respondent also had a history of separating from and getting back together with Emily's father. At one point, respondent testified that she was separating from Emily's father and never going back due to his abuse of her, but then later that week, respondent reported she was back in a relationship with him. Respondent also blamed a failed drug screen on Emily's father, alleging that he had forcibly injected her with methamphetamine.

¶ 5 At the time of the termination hearing, respondent resided in an unapproved placement. Additionally, none of the potential alternative placements respondent provided DSS were willing or appropriate placements for Emily. Prior to this case, respondent's parental rights had been involuntarily terminated to three other children.

¶ 6        DSS petitioned to terminate respondent's parental rights in Emily based on dependency, N.C.G.S. § 7B-1111(a)(6), and on the basis of having had her parental rights to another child involuntarily terminated by a court of competent jurisdiction and respondent lacking the ability or willingness to establish a safe home, N.C.G.S. § 7B-1111(a)(9). A hearing on the petition to terminate respondent's parental rights in Emily was conducted on 25 August 2020 before Judge Houston. Respondent was present and represented by counsel.

¶ 7        After the presentation of evidence and arguments of counsel as to adjudication, Judge Houston found that grounds alleged for termination as to respondent existed and proceeded to the dispositional phase. Following the presentation of evidence and arguments of counsel as to disposition, Judge Houston took the matter under advisement and scheduled an in-chambers conference with the attorneys for the following Thursday, 27 August 2020.

¶ 8        Judge Houston retired from office on 31 December 2020. On 15 February 2021, an order was entered terminating respondent's parental rights in Emily based on an adjudication of grounds under N.C.G.S. § 7B-1111(a)(6) and (9) and a dispositional determination that it was in Emily's best interests to terminate respondent's parental rights. The order states: "Findings of fact, conclusions of law, and decretal announced in chambers on the 28th day of August 2020 by the Honorable Jeanie R. Houston

. . . [a]dministratively and ministerial[l]y signed by the Chief District Court Judge this the 15th day of Feb[ruary], 2021." Respondent appealed.

## II. Analysis

On appeal, respondent does not contest the trial court's adjudication that grounds existed to terminate her parental rights pursuant to N.C.G.S. § 7B-1111(a)(6) and (9), nor does respondent challenge the trial court's determination that terminating her parental rights was in Emily's best interests. Instead, respondent's only argument is that the order was a nullity pursuant to Rules 52 and 63 of the North Carolina Rules of Civil Procedure because Chief Judge Byrd signed the order without presiding over the hearing.

### A. Standard of Review

The North Carolina Rules of Civil Procedure are part of the General Statutes. *See* N.C.G.S. § 1A-1 (2021). Accordingly, interpreting the Rules of Civil Procedure is a matter of statutory interpretation. *See Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.*, 322 N.C. 271, 272, 276 (1988). "A question of statutory interpretation is ultimately a question of law for the courts." *Brown v. Flowe*, 349 N.C. 520, 523 (1998). We review conclusions of law de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

In contrast, "[a] trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019).

Further, "[f]indings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019).

## B. Validity of the Order

The only issue before this Court is whether the termination order was properly entered pursuant to Rules 52 and 63 of the North Carolina Rules of Civil Procedure. Rule 52 provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a)(1). Rule 63 provides that

> [i]f by reason of . . . retirement . . . a judge before whom an action has been tried or a hearing has been held is unable to perform the duties to be performed by the court under these rules after a verdict is returned or a trial or hearing is otherwise concluded, then those duties, including entry of judgment, may be performed[ ]
>
> . . . .
>
> . . . [i]n actions in the district court, by the chief judge of the district . . . .

N.C.G.S. § 1A-1, Rule 63. However, "[i]f the substituted judge is satisfied that he or she cannot perform those duties because the judge did not preside at the trial or hearing or for any other reason, the judge may, in the judge's discretion, grant a new trial or hearing." N.C.G.S. § 1A-1, Rule 63.

¶ 13        One of "the duties to be performed by the court under these rules," N.C.G.S. § 1A-1, Rule 63, is finding the facts, stating the conclusions of law, and directing the entry of judgment pursuant to Rule 52. Thus, this Court has interpreted Rules 52 and 63 together to provide that a substitute judge cannot find facts or state conclusions of law in a matter over which he or she did not preside. *See In re C.M.C.*, 373 N.C. 24, 28 (2019). Conversely, and respondent concedes, if Judge Houston made the findings of fact and conclusions of law that appear in the order before retiring and Chief Judge Byrd did nothing more than put his signature on the order and enter it ministerially, the order is valid.

¶ 14        Respondent argues that the order is a nullity because the record is silent on whether the order was properly entered in accordance with Rules 52 and 63. However, in making this argument, respondent fails to recognize that she bears the burden of proving the order was improperly entered, due to the presumption of regularity. As this Court has long recognized,

> [i]t is, as a general rule presumed that a public official properly and regularly discharges his duties, or performs acts required by law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require.

*Huntley v. Potter*, 255 N.C. 619, 628 (1961) (cleaned up). Thus, the burden is "on the party challenging the validity of public officials' actions to overcome this presumption

by competent and substantial evidence." *Leete v. County of Warren*, 341 N.C. 116, 119 (1995); *see also Huntley*, 255 N.C. at 628.

¶ 15        Though this Court has not previously addressed whether the presumption of regularity applies to the specific action of a Chief Judge signing and entering an order with findings of fact and conclusions made by a retired judge, after careful review, we hold that it does. To begin with, this Court has long recognized that the "presumption of regularity attaches generally to judicial acts." *Freeman v. Morrison*, 214 N.C. 240, 243 (1938). We have also described this rule as a general presumption that applies when "a public official in the performance of an official duty acts in accordance with the law and the authority conferred upon him." *State v. Watts*, 289 N.C. 445, 449 (1976). Based on this general characterization, Chief Judge Byrd's judicial action in this case would appear to qualify. Chief Judge Byrd was a public official: a chief district court judge; he performed an official duty in accordance with the law: signing and entering an order on behalf of a retired judge who presided over the hearing in accordance with Rules 52 and 63; and he acted within the authority conferred on him: Rules 52 and 63 authorize the chief district court judge to sign and enter such an order and Chief Judge Byrd was the chief district court judge of his district.

¶ 16        Moreover, this Court's precedent supports applying the presumption of regularity to this case because the action in question was administrative and ministerial. In *Henderson County v. Osteen*, 297 N.C. 113 (1979), for instance, we held

that the mailing of a notice of sale by the sheriff's office fell within the presumption of regularity. *Id.* at 117. In *State v. Watts*, we held that the authentication of records by an authorized officer of the Division of Motor Vehicles received this presumption. *Watts*, 289 N.C. at 449–50.[3] And in *In re N.T.*, 368 N.C. 705 (2016), we held that a signature appearing in a space marked for "Signature of Person Authorized to Administer Oaths" should receive this presumption. *Id.* at 708. In each of those cases, the official's action at issue was administrative and ministerial. Likewise, in this case, the action of the Chief District Judge, signing and entering an order, was also purely administrative and ministerial. Thus, the presumption of regularity applies in this case.

¶ 17    Applying the presumption of regularity, we presume that Chief Judge Byrd signed the order in an exclusively administrative and ministerial capacity, in conformance with Rules 52 and 63. To challenge this presumption, respondent must meet the heavy burden of proving that Chief Judge Byrd violated the Rules of Civil Procedure and signed the order despite not knowing whether Judge Houston made the findings of fact and conclusions of law that appear in it. Yet respondent failed to provide any evidence that Chief Judge Byrd improperly signed the order. Nor can respondent argue that such evidence was unavailable because the announcement

---

[3] Notably, the public officials whose actions were challenged were not named parties in *Osteen* or *Watts*.

occurred off the record. Rule 9(c)(1) of the North Carolina Rules of Appellate Procedure provides an express avenue to include off-the-record evidence in the record on appeal. N.C. R. App. P. 9(c)(1). Respondent chose not to pursue this option. As a result, respondent failed to meet her burden, and the presumption of regularity was unrebutted.

¶ 18        Further, respondent is incorrect that the record is entirely silent on who made the findings of fact and conclusions of law that appear in the order. The order includes a statement that "[f]indings of fact, conclusions of law, and decretal announced in chambers on the 28th day of August 2020 by the Honorable Jeanie R. Houston." While this statement is not labeled as a finding of fact, this Court has previously recognized that "[r]egardless of the label given by the trial court, this Court is 'obliged to apply the appropriate standard of review to a finding of fact or conclusion of law.' " *In re S.C.L.R.*, 378 N.C. 484, 2021-NCSC-101, ¶ 19 (quoting *In re J.S.*, 374 N.C. 811, 818 (2020)). Whether a certain action occurred at a given place and time is a question of fact. *See State ex rel. Utils. Comm'n v. Pub. Staff–N.C. Utils. Comm'n*, 322 N.C. 689, 693 (1988). Therefore, a statement in the order that on 28 August 2020 Judge Houston announced in chambers the findings of fact, conclusions of law, and decretal that appear in the order is a finding of fact.

¶ 19        Since respondent never specifically challenged the finding that Judge Houston made the findings of fact and conclusions of law that appear in the order, it is binding

on appeal. *See In re T.N.H.*, 372 N.C. at 407. Moreover, even if respondent's brief is interpreted as challenging this finding, the finding is supported by the presumption of regularity, which respondent has failed to rebut. At best, respondent can point to a discrepancy between the trial transcript and the adjudication of one of the grounds regarding Emily's father. However, "a trial court's oral findings are subject to change before the final written order is entered," *In re A.U.D.*, 373 N.C. 3, 9–10 (2019), and Emily's father is not a party to this appeal and has not challenged that adjudication. More importantly, a single discrepancy between the transcript and the order is not sufficient to rebut the "heavy burden" a party faces when challenging the presumption of regularity, which must be satisfied "with *competent and substantial* evidence." *See Leete*, 341 N.C. at 119 (emphasis added).

¶ 20    By that same reasoning, other evidence in the record supports the order. For example, DSS had alleged a third ground existed to terminate respondent's parental rights: willful failure to pay a reasonable portion of the cost of the juvenile's care pursuant to N.C.G.S. § 7B-1111(a)(3). However, during the hearing, DSS dismissed all claims against respondent under N.C.G.S. § 7B-1111(a)(3). At the conclusion of the adjudicatory hearing, Judge Houston stated that she would find the existence of "all the grounds" for termination against respondent. Looking to the order, it concludes that grounds exist to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(6) and (a)(9) but not (a)(3), which was consistent with the

discussions that occurred at the hearing. The transcript also reflects that at the conclusion of the hearing a meeting regarding the case was scheduled between Judge Houston and the parties' attorneys for Thursday, August 27. It is a reasonable inference that on August 28, the day after the meeting, Judge Houston would announce the findings of fact and conclusions of law that appear in the order.

¶ 21     In summary, there is an unchallenged finding of fact in the record that Judge Houston made the findings of fact and conclusion of law that appear in the order. The finding is supported by the presumption of regularity which respondent has failed to rebut. Based on this finding, Chief Judge Byrd's signature and entry of the order was an exclusively administerial and ministerial action, which meets the legal requirements of Rules 52 and 63. Therefore, respondent has failed to prove that the order was a nullity.

## III.    Conclusion

¶ 22     Emily has been in the care and custody of DSS since February of 2018. Her parents' parental rights have been terminated since February of 2021. Yet over a year since the termination order was entered and four years since entering DSS custody, Emily still has not received permanence.

¶ 23     Respondent does not challenge the trial court's adjudication that grounds existed to terminate her parental rights or that termination was in Emily's best interests. Instead, her only argument on appeal is that the order was a nullity when

it was entered. However, as discussed, the order is supported by the presumption of regularity, which respondent has failed to rebut, as well as an unchallenged finding of fact. Accordingly, we affirm the order terminating respondent's parental rights.

AFFIRMED.

Justice HUDSON dissenting.

The judicial process earns its credibility, in part, by showing its work. A case's paper record and trial court documents allow both the parties and appellate courts to understand the procedural and substantive foundation of a trial court's ultimate outcome. As the stakes of that outcome are raised, so is the importance of its foundational process and reasoning.

Here, the thin record cannot bear the weight of the order's heavy consequence. The August 2020 hearing transcript indicates that the initial judge, Judge Jeanie R. Houston, made a few oral findings, took the case under advisement, and planned on convening a subsequent meeting for further conversation. However, there is no record of that meeting or of any findings or conclusions made therein, or at any point before Judge Houston's December 2020 retirement. Chief District Court Judge David V. Byrd's February 2021 written order summarily states that its findings and conclusions were made at an August 2020 meeting but in fact directly contradicts some of the initial findings announced at the hearing. The February 2021 order also states that it was signed "administratively and ministerially," but the record's gaps indicate otherwise. Notably, the consequence of this order could hardly be more severe: it permanently severs the parental rights of a mother to her young daughter.

In my view, Rules 52, 58, and 63 of our Rules of Civil Procedure collectively require more. Above, the majority's improper application of a "presumption of regularity" contorts a de novo review of a legal conclusion into a much more

deferential standard, allowing the substitute judge's mere recitation of the "administrative and ministerial" requirement to patch significant holes in the record. Likewise, the majority erroneously determines that Chief Judge Byrd's factual finding regarding the 28 August 2020 in-chambers meeting is unchallenged and therefore binding, when in fact respondent's entire appeal is implicitly and explicitly founded on challenging that finding. Through both errors, the majority's analysis turns this case on its head, determining that respondent has provided insufficient evidence of irregularity when in fact this lack of evidence is precisely what respondent challenges and what renders the record so irregular in the first place. In so doing, the majority improperly applies a presumption of regularity to justify the entry of the order by the chief judge, who had not heard the evidence. Because no party to this action argued for or even mentioned a presumption of regularity, and because Rules 52, 58, and 63 set forth the procedure and foundational principles of our analysis, I respectfully dissent.

## I. Factual and Procedural Background

On 22 November 2019, DSS filed a petition to terminate the parental rights of respondent and the father in their daughter, Emily. As to respondent, DSS alleged two grounds for termination: (1) dependency, N.C.G.S. § 7B1111(a)(6); and (2) respondent had previously had her parental rights to another child terminated, N.C.G.S. § 7B-1111(a)(9). As to the father, DSS alleged two grounds for termination:

(1) the father willfully failed to pay a reasonable portion of Emily's cost of care, N.C.G.S. § 7B-1111(a)(3); and (2) dependency, N.C.G.S. § 7B-1111(a)(6).

On 25 August 2020, Judge Houston conducted a hearing on the petition. After hearing testimony from several witnesses and arguments from the parties regarding adjudication, Judge Houston stated: "All right. I'll find there's grounds. What do you say about the dad's child support? I actually made a note of that myself." In response, DSS's attorney made further arguments regarding the father's child support obligations. Ultimately, Judge Houston stated: "I'm going to find *all the grounds except for that one*. I actually agree with you on that one, [father's attorney]." (Emphasis added). Accordingly, Judge Houston implied that she would find the existence of both alleged grounds to terminate respondent's parental rights (dependency and prior termination of parental rights), but only *one* of the two alleged grounds to terminate father's parental rights (dependency but not failure to pay a reasonable portion of cost of care).

Next, the trial court proceeded with testimony and arguments regarding disposition. After the conclusion of these arguments, Judge Houston did not announce any further findings or conclusions. Instead, she took the matter under advisement. Specifically, Judge Houston stated:

> All right, folks. I've got all these exhibits to look at and the report from the guardian [ad litem] and the medical records. So I'll get up—I'm here Thursday [27 August 2020], okay. I would suspect I'd see every one of you but

> [DSS's attorney] Thursday. So we'll get [DSS's attorney] on the phone, and we'll have a conversation, and I'll let you get back to your clients.

This concluded the hearing.

From there, the record is silent as to the occurrence or outcome of any subsequent meeting between Judge Houston and the parties. According to DSS, "[i]nstead of rendering a decision the following Thursday [27 August 2020] as indicated, Judge Houston rendered her decision in chambers on [28 August 2020,] the following Friday." According to respondent, though, "[n]othing in the record indicates that the court ever conducted a further hearing, met with counsel to discuss the order, drafted an order, or that Judge Houston ever entered oral findings on either adjudication or disposition."

On 31 December 2020, Judge Houston retired. There is no direct evidence in the record of Judge Houston having made any further factual findings or legal conclusions before her retirement.

On 15 February 2021, the trial court entered an order terminating the parental rights of respondent and the father. Following extensive factual findings, the order concludes that both grounds exist to terminate respondent's parental rights: (1) dependent juvenile; and (2) prior TPR. The order further concludes that both grounds exist to terminate father's parental rights: (1) failure to pay a reasonable portion of Emily's cost of care; and (2) dependency. The order then concludes that "it is in the

best interests of the minor child and is consistent for her health and safety for [respondent's and the father's] parental rights to be terminated so that the minor child can proceed with the Permanent Plan of adoption." After the subsequent decretal formally terminating the parental rights of respondent and the father, the order states:

> HELD IN AB[E]YANCE IN OPEN COURT ON THE 25th DAY OF AUGUST, 2020.
>
> FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECRETAL ANNOUNCED IN CHAMBERS ON THE 28th DAY OF AUGUST 2020 BY THE HONORABLE JEANIE R. HOUSTON.
>
> ADMINISTRATIVELY AND MINISTERIALLY SIGNED BY THE CHIEF DISTRICT COURT JUDGE THIS THE 15TH DAY OF FEB[RUARY], 2021.

Below these statements, the order is hand-signed "D. V. Byrd for JRH."

¶ 33 On 16 March 2021, respondent appealed to this Court from the February 2021 order. On appeal, respondent argues that the trial court committed prejudicial error when Chief Judge Byrd signed the February 2021 order when he had not presided over the hearing and Judge Houston had retired.

## II. Analysis

¶ 34 Now, this Court must determine whether the February 2021 order is valid under three of our Rules of Civil Procedure: Rules 52, 58, and 63. *See In re C.B.C.*, 373 N.C. 16, 19 (2019). I would hold that it is not.

As noted by the parties and the majority above, this case requires the interpretation of our Rules of Civil Procedure and is therefore reviewed de novo. *Brown v. Flowe*, 349 N.C. 520, 523 (1998). "We review a trial court's adjudication under N.C.G.S. § 7B-1111 to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law. The trial court's conclusions of law are reviewable de novo on appeal." *In re S.C.L.R.*, 378 N.C. 484, 2021-NCSC-101, ¶ 15 (cleaned up).

Rule 52, titled "Findings by the court," requires that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a)(1) (2021).

Rule 58, titled "Entry of judgment," establishes that "a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court pursuant to Rule 5." N.C.G.S. § 1A-1, Rule 58 (2021)

Finally, Rule 63, titled "Disability of a judge," states that:

> If by reason of . . . retirement . . . a judge before whom an action has been tried or a hearing has been held is unable to perform the duties to be performed by the court under these rules *after a verdict is returned or a trial or hearing is otherwise concluded*, then those duties, including entry of judgment, may be performed:
>
> . . . .

>    (2) In actions in the district court, by the chief judge
>    of the district. . . .
>
>    If the substituted judge is satisfied that he or she
>    cannot perform those duties because the judge did not
>    preside at the trial or hearing or for any other reason, the
>    judge may, in the judge's discretion, grant a new trial or
>    hearing.

N.C.G.S. § 1A-1, Rule 63 (2021) (emphasis added).

¶ 39        Four similar cases usefully illustrate how our appellate courts have considered the intersection of these rules within the termination of parental rights context. First, in *In re Whisnant*, the Court of Appeals considered the validity of a termination of parental rights order that was signed by a different judge than the judge who conducted the hearing. 71 N.C. App. 439, 440 (1984). The court stated that Rule 52 "requires the trial court in [non-jury] proceedings to do three things: (1) find facts on all issues of fact joined on the pleadings, (2) declare conclusions of law arising from the facts found, and (3) to enter judgment accordingly." *Id.* at 441. Although the initial judge had "presided over the hearing and then announced in open court that respondent's parental rights were terminated," the court determined that "[t]his is not sufficient compliance with the obligations imposed by Rule 52." *Id.*

¶ 40        Regarding Rule 63, the *In re Whisnant* court observed that "[t]he function of a substitute judge is . . . ministerial rather than judicial." *Id.* "Rule 63," the court continued,

> does not contemplate that a substitute judge, who did not hear the witnesses and participate in the trial, may nevertheless participate in the decision[-]making process. It contemplates only performing such acts as are necessary under our rules of procedure to effectuate a decision already made. *Under our rules, where a case is tried before a court without a jury, findings of fact and conclusions of law sufficient to support a judgment are essential parts of the decision[-]making process.*

*Id.* at 441–42 (emphasis added) (cleaned up). Because there was no indication that the original judge had been unable to perform his duties, the court held that Rule 63 was inapplicable. *Id.* at 441. But because the original judge failed to meet the requirements of Rule 52, the Court of Appeals vacated the order for him to do so or if he was unavailable, for the case to be reheard de novo. *Id.* at 442.

Second, in *In re Savage*, the Court of Appeals again considered the validity of a termination of parental rights order that was signed by a different judge than the judge who heard the evidence. 163 N.C. App. 195, 196 (2004). Noting that its prior holding in *In re Whisnant* was "dispositive of this appeal," the court determined that under the requirements of Rules 52 and 63, the order was invalid. *Id.* at 197–98. Further, because the original judge "ha[d] since left office and is unavailable to render a decision in th[e] case on remand," the court held that it was "left with no choice but to remand this case for a hearing *de novo*." *Id.* at 198.

Third, in *In re C.M.C.*, this Court considered the validity of two termination of parental rights orders: an initial order that had been signed by a different judge than

the judge who conducted the hearing and appealed by the respondent but subsequently vacated by the signing judge, and a second corrected order signed by the same judge who conducted the hearing. 373 N.C. 24, 25–27 (2019). Adopting the Rule 52 analysis in both *In re Whisnant* and *In re Savage* summarized above, this Court "conclude[d] that the initial termination orders signed by [the substitute judge] were . . . a nullity." *Id.* at 28. We further determined that the initial order was also invalid under Rule 58, which "provides that a judgment is entered when it is reduced to writing, signed by *the* judge, and filed with the clerk of court." *Id.* (cleaned up). Ultimately, because "the entry of additional orders correct[ed] the error worked by [the substitute judge]'s decision to sign orders in a termination of parental rights case [over] which she had not presided," we affirmed the corrected order. *Id.* at 29.

¶ 43        Finally, in *In re R.P.,* the Court of Appeals considered the validity of a termination of parental rights order that was signed by a substitute judge after the judge who conducted the hearing and orally announced certain factual findings and conditions to be included in the order resigned before issuing the order. 276 N.C. App. 195, 2021-NCCOA-66, ¶¶ 8–11. Despite the parties' stipulation to the facts underlying the adjudication, the court, relying on *In re Whisnant*, stated that

> *nothing in the record or transcript shows [the original judge] ever made or rendered the final findings of fact and conclusions of law* in the unfiled and unsigned orders. He merely stated he would enter the adjudication "as is admitted to." Since the record on appeal shows only a stipulation without any adjudication of the facts and

> conclusions of law, or rendering of the order, any action by
> [the substitute judge] to cause the later prepared and
> unsigned draft order to be entered was not solely a
> ministerial duty.

*Id.* ¶ 23 (emphasis added). The court further reasoned that because "[t]he written disposition portion of the order went beyond the oral recitations of [the original judge,] . . . [r]endering and entering judgment was more than a ministerial task." *Id.* ¶¶ 26–27. Finally, the court noted that this Court's ruling in *In re C.M.C.* "specifically adopted the reasoning of [the Court of Appeals'] decisions in *In re Whisnant* and *In re Savage*" when considering the validity of termination of parental rights orders signed by substitute judges. *Id.* ¶ 29 (cleaned up). In light of this reasoning, the court held that the substitute judge "was without authority to sign the adjudication and disposition orders and the orders are a nullity." *Id.* ¶ 27 (cleaned up).

¶ 44        Collectively, as summarized by the majority here, these cases establish that

> a substitute judge cannot find facts or state conclusions of
> law in a matter over which he or she did not preside.
> Conversely, . . . if [the original judge] made the findings of
> fact and conclusions of law that appear in the order before
> retiring and [the substitute judge] did nothing more than
> put his signature on the order and enter it ministerially,
> the order is valid.

¶ 45        Here, in my opinion, these rules and precedents require this Court to vacate the February 2021 order below. As in the above cases, the original judge here presided over the hearing and made certain initial oral findings but never rendered finalized factual findings or legal conclusions, either orally or in writing. As in the above cases,

the substitute judge here signed the February 2021 order despite not having presided over the hearing and without anything in the record showing the origin or details of the findings and conclusions that ultimately appear in the order. Further, as in *In re R.P.*, the order's findings and conclusions go well beyond any made on the record by the original judge during the hearing or thereafter. *In re R.P.,* ¶ 26. As in the above cases, therefore, Chief Judge Byrd here acted beyond a mere ministerial and administrative capacity, and the order is subsequently invalid under Rules 52, 58, and 63.

¶ 46        Of course, this case includes one notable fact that the above cases did not. Here, Chief Judge Byrd wrote at the end of the February 2021 order:

> HELD IN AB[E]YANCE IN OPEN COURT ON THE 25th DAY OF AUGUST, 2020.
>
> FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECRETAL ANNOUNCED IN CHAMBERS ON THE 28th DAY OF AUGUST 2020 BY THE HONORABLE JEANIE R. HOUSTON.
>
> ADMINISTRATIVELY AND MINISTERIALLY SIGNED BY THE CHIEF DISTRICT COURT JUDGE THIS THE 15TH DAY OF FEB[RUARY], 2021.

¶ 47        The majority's overreliance on these statements is the foundation of our disagreement about the correct outcome here. Specifically, the majority's error in my view arises from: (1) its improper application of a "presumption of regularity" to Chief Judge Byrd's legal conclusion that he signed the order "administratively and

ministerially"; and (2) its erroneous determination that Chief Judge Byrd's factual finding regarding the 28 August 2020 in-chambers announcement was unchallenged and therefore binding, and alternative application of a presumption of regularity to this factual finding.

¶ 48          First, the majority errs by applying a "presumption of regularity" to Chief Judge Byrd's statement that he signed the order "administratively and ministerially." Determining whether an order is signed in a purely administrative and ministerial capacity requires the application of legal standards to the present facts and is therefore a conclusion of law. *See Woodard v. Mordecai*, 234 N.C. 463, 472 (1951) ("Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law"). As a legal conclusion, then, this statement is properly reviewed by this Court de novo; it does not warrant a presumption of regularity. Previously, this Court has applied a presumption of regularity in two contexts: first to actions of public officials who are parties or otherwise involved in the litigation, and second to a trial court's decision to exercise jurisdiction over a case. *See In re C.N.R.*, 379 N.C. 409, 2021-NCSC-150, ¶ 20 (noting these two applications). Neither applies here.

¶ 49          In the first context, this Court has applied a presumption of regularity to challenged actions of a public official who is either a party in the case or otherwise directly involved in the facts of the underlying litigation. For instance, all six cases

cited by the majority in its presumption of regularity analysis above fall into this category. In *Huntley v. Potter*, the Court applied a presumption of regularity to a town's land annexation report. 255 N.C. 619, 628 (1961). In *Leete v. County of Warren*, the Court applied a presumption of regularity to a county's employment action. 341 N.C. 116, 117 (1995). In *Freeman v. Morrison*, the Court applied a presumption of regularity to a notary public's lease acknowledgement. 214 N.C. 240, 242–43 (1938). In *State v. Watts*, the Court applied a presumption of regularity to the reprinted signature of a Department of Motor Vehicle official. 289 N.C. 445, 449 (1976). In *Henderson County v. Osteen*, the Court applied a presumption of regularity to a sheriff office's mailing of a notice of a tax foreclosure sale. 297 N.C. 113, 117 (1979). Finally, in *In re N.T.*, the Court applied a presumption of regularity to the illegible signature of a Wake County Human Services official on a juvenile petition. 368 N.C. 705, 707 (2016). In all of these cases, this Court afforded a presumption of regularity not to a legal conclusion of the trial court, but to the action of a public official or entity that was directly implicated in the case.

¶ 50    The second context in which this Court has previously applied a presumption of regularity is a trial court's decision to exercise jurisdiction over a case. In these instances, "[t]his Court presumes the trial court has properly exercised jurisdiction unless the party challenging jurisdiction meets its burden of showing otherwise." *In re L.T.*, 374 N.C. 567, 569 (2020).

In some cases, this Court has applied both types of presumptions of regularity. For instance, in *In re C.N.R.*, where the respondent parents challenged a verification form because it was missing the date of its notarization, this Court held that respondents failed to overcome the presumption of regularity afforded both to notarial acts *and* to the trial court's exercise of jurisdiction over the case. 379 N.C. 409, 2021-NCSC-150, ¶ 20. Likewise, in *In re N.T.*, this Court held that respondent failed to overcome the presumption of regularity afforded both to the illegible petition signature *and* to the trial court's exercise of jurisdiction over the case. 368 N.C. at 708.

Here, neither version of the presumption of regularity applies. First, while Chief Judge Byrd is certainly a public official, he is neither a party in the case nor a tangential actor in the facts underlying the litigation whose clerical actions the court views with a certain degree of leniency; he is acting as the court itself. Second, this case does not present a question of jurisdiction but one of statutory interpretation. Respondent does not challenge Judge Houston's exercise of jurisdiction over the case; she challenges the validity of Chief Judge Byrd's subsequent actions under the Rules of Civil Procedure. Accordingly, Chief Judge Byrd's legal conclusion that he signed

the February 2021 order "administratively and ministerially" does not fall within the actions to which this Court has previously applied a presumption of regularity.[1]

¶ 53    Nor should it. As the majority correctly notes above, this case presents a question of statutory interpretation that this Court must review de novo: whether Chief Judge Byrd's signing of the February 2021 order violates our Rules of Civil Procedure. By applying a presumption of regularity to Chief Judge Byrd's mere recitation of the "administratively and ministerially" requirement, the majority fails to review this legal conclusion de novo and instead improperly expands our presumption of regularity doctrine into new territory, tilting the scales significantly in favor of allowing the order to stand.

¶ 54    This expansion is ill-advised. To support its application of a presumption of regularity to Chief Judge Byrd's legal conclusion that he signed the February 2021 order administratively and ministerially, the majority reasons that the presumption "attaches generally to judicial acts" and "applies when a public official in the performance of an official duty acts in accordance with the law and authority conferred upon him." Therefore, according to the majority, "Chief Judge Byrd's judicial action in this case would appear to qualify." Notably and problematically, though, this broad reasoning would also support applying a presumption of regularity

---

[1] Notably, both DSS and the guardian ad litem apparently recognize that a presumption of regularity is inapplicable in this case, as neither make any mention of or argument for such a presumption in their briefs.

to *any* statement or action by a judge acting in her official capacity, including both factual findings and legal conclusions. Such a broadly applied presumption of regularity would eviscerate the proper standards by which appellate courts review a trial court's findings and conclusions: for competent evidence and de novo, respectively.

¶ 55        Finally, the majority reasons that "this Court's precedent supports applying the presumption of regularity to this case because the action in question was administrative and ministerial." As noted above, though, the cases the majority cites are wholly inapplicable here because they exclusively apply a presumption of regularity to acts of public officials involved in the underlying litigation, not to a ruling of the trial court itself. What's more, this reasoning is entirely tautological: the majority first concludes that Chief Judge Byrd's action was administrative and ministerial because a presumption of regularity applies, and then concludes that a presumption of regularity applies because the action was administrative and ministerial. This reasoning cannot support its own weight and should be rejected.

¶ 56        To be clear, this does not imply that Chief Judge Byrd's "administratively and ministerially" conclusion should be considered untrustworthy or as lacking good faith. Rather, as in all de novo reviews of a legal conclusion, the judge's intentions are simply not a factor in our determination, which focuses exclusively on the order's legal validity. Here, our review does not consider whether or not Chief Judge Byrd

*intended* to sign the order "administratively and ministerially," as he concluded. Instead, it considers the record evidence anew to determine whether or not his signing of the order was *actually* limited to an administrative and ministerial capacity, based on the available evidence in the record. Accordingly, in my opinion, the majority errs by applying a presumption of regularity to the judge's statement.

¶ 57    When properly reviewed de novo, the evidence in the record cannot adequately support the majority's conclusion that Chief Judge Byrd signed the order in a purely administrative and ministerial capacity in conformity with Rules 52 and 63. During the August 2020 hearing, Judge Houston indicated that she planned on finding both alleged grounds for termination as to respondent (dependency and prior termination of parental rights) but only *one* of the alleged grounds for termination as to the father, (dependency but not failure to pay a reasonable portion of cost of care). After hearing arguments regarding disposition, though, Judge Houston did not make further findings or legal conclusions at that time; instead, she stated that she would hold the case in abeyance and conduct a future conversation with the parties. However, there is no direct evidence in the record of the occurrence or outcome of this future conversation. Instead, the record skips directly to Chief Judge Byrd's February 2021 order without any indication as to who made the order's extensive findings and conclusions or when they were made. The record is likewise silent on what, if any, communications occurred between Judge Houston and Chief Judge Byrd regarding

any findings or conclusions in this case, either before or after Judge Byrd's retirement. The first appearance in the record of almost all of the detailed findings and conclusions included within the February 2021 order is the order itself, which bears Chief Judge Byrd's signature. As established by the cases from this Court and the Court of Appeals noted above, this gap in the record reveals a failure (intended or not) to uphold the requirements of Rules 52, 58, and 63 that a substitute judge act in a purely administrative and ministerial capacity.

¶ 58        Furthermore, there is a significant inconsistency between Judge Houston's statements during the August 2020 hearing and the legal conclusions reached in the February 2021 order that cast additional doubt on the order's validity under our Rules. Although Judge Houston plainly stated at the August 2020 hearing that she would *not* find grounds to terminate the father's parental rights for failure to pay a reasonable portion of the cost of care under subsection (a)(3), the February 2021 order *does* conclude that grounds exist to terminate the father's parental rights on that basis. This fundamental misalignment between Judge Houston's statements at the hearing and the February 2021 order raises significant concern about the origin of the order's findings and conclusions, and thus upon DSS's argument—and the majority's conclusion—that the order was signed in a purely administrative and ministerial capacity.

Instead of engaging in appropriate de novo review, the majority's erroneous presumption of regularity transforms the lack of evidence in the record from a liability to an asset. Whereas the majority rules under a presumption of regularity that "respondent failed to provide any evidence that Chief Judge Byrd improperly signed the order," respondent's entire argument before this Court revolves around the complete lack of evidence in the record showing that Judge Houston made the extensive, formal factual findings and legal conclusions that first appear in the February 2021 order signed by Chief Judge Byrd. This is not to say that respondent had no burden at all before this Court. Rather, by adequately demonstrating the significant hole in the record here regarding the origin of the ultimate findings and conclusions, respondent met the burden on a de novo review: showing that when considered anew, the facts here illustrate that the February 2021 order fails to meet the requirements of Rules 52, 58, and 63, and is therefore invalid.

Second, the majority errs in concluding that Chief Judge Byrd's statement regarding the 28 August 2020 chambers "announcement" of factual findings and legal conclusions was unchallenged and therefore binding on appeal. In fact, respondent's *entire appeal* is premised upon explicitly and implicitly challenging the occurrence and validity of any in-chambers announcement based on its lack of direct evidence in the record. For instance, the sole argument heading in respondent's appellate brief asserts that the February 2021 order is invalid because "Judge Jeanie Houston had

presided over the hearing on [25 August 2020], and had retired on [31 December 2020], *without making any findings of fact or conclusions of law.*" (Emphasis added). This argument is implicitly and explicitly repeated and expounded upon throughout respondent's brief. For example:

- "The Honorable Jeanie Houston, presiding judge, in open court did not make a determination as to the best interests, but in the written order the chief district court judge, who had not heard the case, determined it to be in the best interest of Emily to terminate [respondent's parental] rights";

- "Nothing in the record indicates that the court ever conducted a further hearing, met with counsel to discuss the order, drafted an order, or that Judge Houston ever entered oral findings on either adjudication or disposition" ;

- "The record does not indicate who drafted the order or when it was drafted";

- "*[Chief] Judge Byrd* determined it to be in the best interests of Emily to terminate the rights of both parents" (emphasis added);

- "Since Judge Houston did not draft the order before retiring and did not enter any findings of fact or conclusions of law in open court, [Chief] Judge Byrd did not sign the order in a ministerial function";

- "Since Judge Houston retired on [31 December 2020], and [Chief] Judge Byrd did not preside over the termination hearing the order signed by [Chief] Judge Byrd is a nullity";

- "This meeting may or may not have occurred. Nothing in the record speaks to it. If it did happen, nothing transpired in open court";

- "The court reporter and attorneys for [DSS and the guardian ad litem] assured [respondent's counsel] that no hearing occurred other than the hearing on [25 August 2020]";

- "The record is silent as to whether the parties drafted the order with the input of Judge Houston before her retirement";

- "[T]he record is silent about whether [Chief Judge Byrd] had the complete findings of Judge Houston";

¶ 61   To be sure, at no point in her brief does respondent state with exacting formality "I challenge Chief Judge Byrd's factual finding that Judge Houston announced findings of fact and conclusions of law in chambers on 28 August 2020." But she is not required to use any particular words; instead, it is more than sufficient for respondent to make implicitly and explicitly clear throughout her argument— indeed as the very premise of her appeal—that she challenges the validity of this finding. Just as the majority is perfectly able to determine that Chief Judge Byrd's statement is a finding of fact without it being formally labeled as such, it should likewise be able to determine that respondent explicitly and implicitly challenges this finding without her labeling it as such. Determining otherwise is erroneous.

¶ 62   Finally, the majority alternatively reasons that "even if respondent's brief *is* interpreted as challenging this finding, the finding is supported by the presumption

of regularity, which respondent has failed to rebut." (Emphasis added). As above regarding Chief Judge Byrd's legal conclusion that he signed the order administratively and ministerially, this reasoning improperly applies a presumption of regularity where this Court has never done so before—this time, to a trial court's finding of fact. As above, this application is novel and erroneous.

¶ 63        When a trial court's finding of fact is challenged on appeal, this Court does not *presume* that the trial court properly found the fact; instead, it considers the record itself to determine whether the finding is indeed supported by competent evidence. *In re S.C.L.R.*, 378 N.C. 484, 2021-NCSC-101, ¶ 15. This standard of review requires a party challenging a trial court's factual finding to demonstrate that the finding is inadequately supported by the record, but does not begin the inquiry by tilting the scales against her through a presumption of regularity.

¶ 64        As above, this expansion of our presumption of regularity doctrine to apply to a trial court's challenged factual finding is ill-advised. In this case, it transforms the problem into the solution, reasoning that the glaring lack of record evidence indicates that respondent has failed to demonstrate irregularity when that same lack of evidence is what respondent challenges as irregular in the first place. More broadly, it applies newfound deference to a trial court's challenged findings of fact, which this Court properly reviews for competent evidence.

When properly reviewed for competent evidence, Chief Judge Byrd's finding here fails. As repeatedly pointed out by respondent, there is no direct evidence in the record to support Chief Judge Byrd's finding that Judge Houston ever made the extensive factual findings and legal conclusions stated in the February 2021 order signed by Chief Judge Byrd after Judge Houston's retirement. Further, the circumstantial evidence of Judge Houston's statement during the hearing that such a conversation *would* happen is significantly undermined by the fact that the one of the conclusions of law ultimately made in the February 2021 order is in direct conflict with the limited findings and conclusions she announced at the hearing. In short, Chief Judge Byrd's factual finding that the "findings of fact, conclusions of law, and decretal [were] announced in chambers on the 28th day of August 2020 by the Honorable Jeanie R. Houston" is not supported by competent evidence, and therefore must be rejected.

### III.  Conclusion

Our judicial process maintains credibility through transparency. Specifically, Rules 52 and 58 of our Rules of Civil Procedure require that the judge who presided over a non-jury hearing make sufficient factual findings and legal conclusions to support its ultimate ruling. If that judge is unavailable to issue that ultimate ruling, Rule 63 allows a substitute judge to issue it, but only if he or she is acting in a purely

administrative and ministerial capacity—that is, if the original judge made the findings and conclusions, and the substitute judge is merely signing off on them.

¶ 67        Here, respondent has demonstrated that there is no competent evidence in the record showing that Judge Houston made the factual findings and legal conclusions that appear in the February 2021 order signed by Chief Judge Byrd. As a result, the findings do not support the legal conclusion that he signed the order "administratively and ministerially." Accordingly, I would vacate the order and remand the case back to the trial court to either make additional factual findings or conduct a rehearing.

¶ 68        In my view, the majority's error is twofold: first, the majority errs by applying a presumption of regularity to Chief Judge Byrd's statement that he was signing the order "administratively and ministerially." This Court has not applied such a presumption to such legal conclusions in the past, and should not do so here. Instead, this conclusion of law is properly reviewed by this Court de novo. De novo review reveals that there is no evidence in the record of Judge Houston ever making the extensive findings and conclusions stated in the February 2021 order. Indeed, one of the order's conclusions regarding grounds for termination directly contradicts Judge Houston's statements from the August 2020 hearing. Further, there is no evidence in the record that Judge Houston ever determined or declared that termination was in the best interests of the child. Accordingly, there is insufficient evidence regarding

the origin of the order's findings and conclusions to show that the order was signed in a purely administrative and ministerial capacity. The order is therefore invalid under our Rules of Civil Procedure, and the majority errs in holding otherwise.

¶ 69       Second, the majority errs in concluding that the statement in the order regarding the alleged 28 August 2020 in-chambers announcement is an unchallenged—and therefore binding—finding of fact. In fact, respondent's entire appeal is premised upon implicitly and explicitly challenging this finding. Because no competent evidence in the record supports this finding, it should be disregarded, not upheld. Further, the majority's alternative application of a presumption of regularity to the trial court's factual finding again improperly applies a presumption of regularity where this Court has never done so before, with the effect of distorting the proper standard of review: whether the finding is supported by competent evidence. When properly reviewed under this standard, Chief Judge Byrd's finding fails and must be rejected.

¶ 70       For these reasons, I would hold that the February 2021 order is invalid, vacate the order, and remand the case to the trial court for additional findings of fact or a rehearing. Accordingly, I respectfully dissent.

Justice MORGAN and Justice EARLS join in this dissenting opinion.